(May 10, 1909.)

# IDAHO IMPLEMENT COMPANY, LTD., a Corporation, Respondent, v. GUS LAMBACH, Appellant.

[101 Pac. 951.]

CONTRACTS FOR SALE OF PERSONAL PROPERTY—EXECUTED AND EXECUTORY—DELIVERY—QUESTION FOR JURY—INSTRUCTIONS OF COURT.

1. The distinction between an actual sale or a mere executory agreement to sell personal property is, that in the former the thing which is the subject of the contract becomes the property of the buyer the moment the contract is concluded and without regard to the fact whether the goods be actually delivered to the buyer or remain in the possession of the seller; while in the latter the goods remain the property of the seller till the contract is executed.

2. In determining the question as to whether the title has or has not passed by the contract, the primary and first consideration is, the intention and understanding of the parties as gathered from the contract, and the circumstances surrounding the sale.

3. If, under all the evidence, different minds might honestly reach different conclusions as to whether the sale was completed or merely an executory agreement to sell, then the question is one of fact, and should be left to the jury.

4. Where the complaint alleges the sale of personal property and the payment of cash to the defendant, and the defendant denies the allegations of the complaint and files a cross-complaint alleging that the defendant sold to the plaintiff certain personal property, and that the plaintiff paid part of the purchase price in personal property and cash, and judgment is demanded for the balance of the contract price, and there is evidence tending to support the cross-complaint of the defendant, it is error for the court to instruct the jury that the defendant set up an offset for damages against the plaintiff's claim by reason of plaintiff's refusal to receive the property alleged to have been sold by the defendant to the plaintiff.

5. In such action where the evidence shows that the property sold by defendant to plaintiff was hay, that the same was segregated and set apart, and part actually delivered, and the remainder offered and tendered to the plaintiff, who neglected and failed to make provision for receiving the same, it is error for the court to instruct the jury that the title to such property sold remained in the defendant until the same was actually delivered to the plaintiff or upon its order.

6. In such transaction it is error for the court to instruct the jury that if the plaintiff, after agreeing to receive the hay, de-

clined to receive the same at the time agreed upon for delivery, then in that event, in order for the defendant to recover damages, he should have established upon the trial the actual market value of such hay at the time fixed for delivery, less the contract price.

7. *Held,* in this case that the instructions of the court as given to the jury were erroneous, and inapplicable to the case as made by the pleadings and the evidence.

(Syllabus by the court.)

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Fremont Wood, Judge.

An action to recover debt. Judgment for plaintiff. Defendant appeals. *Reversed.*

J. C. Johnston, and Gustave Kroeger, for Appellant.

"When from the entire evidence different minds might honestly reach different conclusions as to the sale and acceptance of the property claimed to have been sold, the sale and acceptance are questions for the jury, and their verdict will not be disturbed." (*Coffin v. Bradbury,* 3 Ida. 770, 95 Am. St. 37, 35 Pac. 715; *Rapple v. Hughes,* 10 Ida. 338, 77 Pac. 722; *O'Farrell v. McClure,* 5 Kan. App. 880, 47 Pac. 160.)

What was the intention of the parties is a question for the jury, to be determined under proper instructions from the court. (24 Am. & Eng. Enc. Law, 2d ed., 1047, 1048; *Hatch v. Standard Oil Co.,* 100 U. S. 131, 25 L. ed. 554; *Hathaway v. East Tenn. R. Co.,* 29 Fed. 489; *McClung v. Kelley,* 21 Iowa, 508; *Caywood v. Timmons,* 31 Kan. 394, 2 Pac. 566; *Dyer v. Libby,* 61 Me. 45; *Wigton v. Bowley,* 130 Mass. 254; *Blodgett v. Hovey,* 91 Mich. 571, 52 N. W. 149; *Lobdell v. Horton,* 71 Mich. 681, 40 N. W. 28; *Glass v. Gelvin,* 80 Mo. 297; *Kelsea v. Haines,* 41 N. H. 253; *Kent Iron etc. Co. v. Norbeck,* 150 Pa. 559, 24 Atl. 737; *Hood v. Bloch,* 29 W. Va. 244, 11 S. E. 910.)

The court below took the whole case from the jury, and instructed the jury that there was no sale, and that the property and the whole thereof remained the property of the defendant, and wholly at his risk. This was certainly

error. (*Holley v. St. Louis R. S. & Cole Ry. Co.*, 34 Mo. App. 202; *Wabash, St. L. & P. Ry. Co. v. Shryock*, 9 Ill. App. 323; *Graff v. Finch*, 58 Ill. 379, 11 Am. Rep. 85; *Prowers v. Nowles*, 42 Colo. 442, 94 Pac. 347.)

Delivery under a contract of sale is not necessary to pass the title to personal property, as between the parties. (*Webster v. Granger*, 78 Ill. 230; *Newcomb v. Cabell*, 73 Ky. (10 Bush) 460; *Kling v. Fries*, 33 Mich. 275; *Frazier v. Fredericks*, 24 N. J. L. 162; *Olyphant v. Baker*, 5 Denio, 379; *Hooben v. Bidwell*, 16 Ohio, 509, 47 Am. Dec. 386; 43 Cent. Dig. 727; 24 Am. & Eng. Enc. Law, 2d ed., 1068; Benjamin on Sales, 6th Am. ed., secs. 674, 675.)

"If the seller has done all that is required of him, and the buyer, through neglect and carelessness, allows the goods to remain in the seller's hands, the seller is absolved from all liability for injury resulting therefrom." (*Wood v. Tassell*, 6 Q. B. 234, 51 Eng. Com. L. 234; 24 Am. & Eng. Enc. Law, 2d ed., 1051; *Sweeney v. Owsley*, 53 Ky. (14 B. Mon.) 413.)

Where the buyer of merchandise refused to accept the delivery, the seller wishing to affirm the sale, and recover the price, must show that he tendered the delivery of the chattels at the time and place stipulated in the agreement. (*Benton v. Bidault*, 6 La. Ann. 30; *McIntyre v. Kline*, 30 Miss. 361, 64 Am. Dec. 163; *Hunter v. Wetsell*, 84 N. Y. 549, 38 Am. Rep. 544; *Mackie v. Egan*, 6 Misc. Rep. 95, 26 N. Y. Supp. 13.) A seller of personal property may, upon the purchaser's wrongfully refusing to receive it on due tender thereof, set it aside for the purchaser, and maintain an action for the full purchase price. (*Crown Vinegar & Spice Co. v. Wehrs*, 59 Mo. App. 493.)

H. S. Kessler, for Respondent.

"When the agreement for sale is of a thing not specified, as of an article to manufacture or of a certain quantity of goods in general, without a specific identification of them or an 'appropriation' of them to the contract, as it is technically termed, the contract is an executory agreement and the

property does not pass." (Benjamin on Sales, sec. 462; Mechem on Sales, secs. 721, 723; 21 Am. & Eng. Enc. of Law, 1054; *McLoughlin v. Piatti,* 27 Cal. 451; *Caruthers v. McGarvey,* 41 Cal. 16.)

"When the vendor has not transferred to the buyer the property in the goods which are the subject of the contract, . . . . as where the agreement is for the sale of goods not specific, or of specific goods which are not in a deliverable state, or which are to be weighed or measured before delivery, his only action against the buyer is for damages for nonacceptance." (Benjamin on Sales, sec. 1117; Mechem on Sales, sec. 1689.)

The only possible question for consideration, and which will determine whether or not the instructions of the court were correct, is the question of whether or not there was a subsequent appropriation that would pass the title to the hay. (Benjamin on Sales, secs. 488, 489; Mechem on Sales, sec. 729.)

STEWART, J.—The respondent sued appellant to recover the sum of $77.17.

In the complaint the respondent alleged:

"2. That the plaintiff at Boise, Idaho, between the 17th day of December, A. D. 1904, and the 30th day of April, 1905, at defendant's request, sold and delivered to defendant, goods, wares and merchandise and advanced and paid to defendant money, all of the total amount and agreed value of one hundred and eleven and 25/100 dollars; that defendant has not paid said last-named amount, or any part or portion thereof, except the sum of thirty-four and 08/100 dollars; that there is now due and owing from defendant to plaintiff as a balance due on said sum of $111.25, the sum of seventy-seven and 17/100 dollars, no part or portion of which has been paid."

The defendant answered and denied specifically each of the allegations of the complaint and filed a cross-complaint against the plaintiff, in which in substance it was alleged that the defendant sold to the plaintiff and the plaintiff

bought a carload of twelve tons of baled hay at $11 per ton, then ready for immediate delivery and situated in a shed on defendant's ranch in Ada county, Idaho; that at the time of the making of said contract the plaintiff paid down upon the purchase price of said hay one pair of second-hand weighing scales valued at the sum of $60, and that the scales were delivered to the defendant and by him accepted as part payment.

The cross-complaint then alleges that the defendant was to deliver the hay at the town of Perkins to be put on board of a car to be furnished by the plaintiff; that the plaintiff failed and neglected to furnish the car, and requested the defendant to haul the hay to Boise for delivery and the defendant agreed to the same and hauled to Boise four loads of the hay; that at the time the hay was sold it was situated in a shed upon the defendant's ranch, in which the defendant kept his own hay, and at the time of such sale and before any of the hay was hauled, the same was set aside as the hay and property of the plaintiff and by it accepted, and the plaintiff paid to the defendant in baling ties the sum of $1.25, in cash the sum of $50 in addition to the scales, which were received as part payment; that the defendant notified the plaintiff that he wished to have the hay removed, and unless the same was removed it would become damaged and destroyed by reason of rain and the elements of nature; that he offered to haul it to Boise City to the plaintiff and tendered the same to the plaintiff, and informed the plaintiff that he was ready and willing to haul the hay to Boise City as agreed upon; that the plaintiff promised to secure a place in which to store the said hay, so that the defendant could remove it but neglected so to do although requested, and the defendant was ready and willing to deliver the same, and tendered the delivery, and by reason of the plaintiff's neglect and failure to furnish a place for said hay or to permit the defendant to deliver the same, and by reason of its negligence and carelessness, the hay became damaged and was destroyed by rain and the elements of nature; that while the hay was in

his care he exercised ordinary care in its preservation and gave the same the same attention as he gave to his own property; that the plaintiff is indebted to him in the sum of $20.75 as a balance due upon the purchase price of said hay and interest; that he also sold and delivered to the plaintiff 2,560 pounds of straw at $6 per ton, amounting to the sum of $7.68, leaving a balance due him, including interest of $34.98, for which he asked judgment. The cause was tried to a jury and the jury returned a verdict for the plaintiff in the sum of $63.59. Appellant moved for a new trial, which motion was overruled and this appeal is from the judgment and from the order overruling the motion for a new trial.

There is no substantial conflict in the evidence, and the facts are substantially the same as testified to by witnesses for plaintiff and defendant. Mr. Sloan, a witness for the plaintiff and with whom the contract was made, testifies:

"If I remember right, it was some time in December, 1905. We were buying hay that fall, and Mr. Lambach had some hay for sale, and came in and wanted to know if we would buy it. We told him we would, and the price was set, if I remember right it was $11 a ton. We had a pair of scales there that we used to do weighing on, and the street commissioner ordered us to move them off the street, and so we traded these to Mr. Lambach on some hay, and he took the scales, and we were to take a carload of hay from him delivered at Perkins. . . . . The price of the scales was $60. Later we advanced Mr. Lambach on the hay $50. The item of baling ties, $1.25, is admitted by defendant as correct and that the same was a part payment made upon the hay. . . . . We were to take a carload of hay, and he took the scales as part payment upon that contract. We generally shipped from ten to fourteen or fifteen tons. Twelve tons would be an average car. . . . . They couldn't furnish us with cars, and thereafter he agreed to haul it in the city. He hauled some hay into the city for us; I don't recollect the number of loads, but I know

that he delivered some hay for us, but as to the weights I don't think he ever turned in the weights, if I remember right. . . . . I recollect that he offered to deliver the hay. He never refused to deliver the hay to my knowledge. I heard him speaking about it, asking us the year I was there when they were ready and when they wanted the hay; when they were ready to take it, something like that.''

This, in substance, is the evidence offered by the plaintiff to sustain its case. The defendant and appellant here, among other things, testified:

"I sold them a carload of hay, twelve tons, and took a pair of scales as part payment on the hay. I accepted the scales as part payment on the hay. The hay was to be $11 a ton. Prior to the time the scales were delivered, and prior to the delivery of any hay, one of the Idaho Implement Company came out to look at the hay on my ranch. I thought it was Sloan, but Mr. Sloan says it wasn't him. One of the plaintiff company or firm came out and looked at the hay, and they said it was all right, and accepted it, and they said in a few days they would have a car at Perkins, Idaho, they wanted me to load it in the car. They accepted twelve tons, and said they would have a car on the track at Perkins, Idaho, in two or three days, something like that. · They never furnished a car. I requested them to furnish a car. I told them at the time that I wished that they would do something with the hay, because the shed would leak, and the hay would spoil if they didn't get it away pretty soon. I went and made request of them for a car and for them to furnish one. . . . . Well, when I came in town he said that he thought he would have me deliver it in town and I agreed to deliver it in town for them. I told him that I would deliver it in town wherever they wanted it delivered. I hauled one load in January on the 6th, and one load on January the 18th, and in May and June I hauled two loads more, in 1905. I also delivered one load of straw. I think it was in February. The straw was $6 a ton. I delivered 2,560 pounds of straw. The last load of hay I hauled under the contract was in May or June

sometime. . . . . I told him at the time, that I wanted to deliver it. I went down and told them I wanted to deliver that hay, and he says, 'You keep it there on the ranch three or four days, and I will try and find a place to store it'; and I also told him that the hay would spoil, and that it would be at his own risk. . . . . I notified them about the hay becoming spoiled four or five different times. I told them the hay would spoil if they didn't get it out of there, and that I wanted a place to deliver it. I kept my own hay in the shed a very short time. . . . . I had no other shed in which to store baled hay. I had the hay of plaintiff set off to one side of the shed. I set off the plaintiff's hay just a day or two after I had sold it, just as quick as I could get around to it. . . . . I set aside twelve tons. They never furnished a place for me to deliver the hay, and they never furnished cars to deliver it to. I was ready and willing to deliver the hay at any time. . . . . On or about the 15th day of June, 1905, I saw the plaintiff members of the firm, and had a conversation with them, and tendered the delivery of the hay at that time. I went there and told them I wanted to deliver that hay, and that the hay was spoiling, and they said they would do something with it as soon as they could; for me to leave it there and they would let me know; they never did let me know, and the hay rotted.''

The witness further testifies: ''When I made the deal with the Idaho Implement Company the twelve tons which I sold to them was separated and segregated and set aside about two or three days afterwards, as their hay and property. I separated, set aside, and segregated the hay because I thought it was their hay, and I put it aside for them. . . . . We completed the contract the day the man came out there to look at it. I thought it was Mr. Sloan, but I wouldn't be certain; but it was one of the Idaho Implement Company, I think, because he said so.''

O. Toepperwein testified for the defendant that he was in the employ of the Idaho Implement Company in December, 1904, and he testifies that the company bought a car-

load of hay from Mr. Lambach and traded a pair of scales on the car of hay; that they generally put in twelve, fifteen or eighteen tons in a car, sometimes as low as ten; that he received a phone message from Mr. Lambach while he was in the employ of the company, that he wanted to load the hay, but the company couldn't get a car at that time.

Mr. Sloan testified in rebuttal that he never went out to the Lambach place to look over the hay and never instructed anyone to go.

Upon the conclusion of this evidence the court instructed the jury as follows:

"By this action the plaintiff seeks to recover from the defendant the sum of seventy-seven and seventeen one-hundredths dollars and interest thereon since the 30th day of April, 1905, the same being for a balance due on account of merchandise sold and delivered to defendant, at defendant's request and for money advanced and paid to the defendant by plaintiff.

"The items charged by the plaintiff and admitted to have been received by the defendant are one set second-hand scales, $60; one bundle baling ties, $1.25; and cash $50; total of $111.25. The plaintiff and defendant agreed on the following credits: Two loads of hay, one of 2,350 pounds and one 2,450 pounds, valued at $26.30, and a load of straw, 2,560 pounds, of the value of $7.68, making a total of $34.08.

"The defendant further claims that he delivered two additional loads of hay, one of 2,300 pounds to Mr. Locke and one of 2,400 pounds to Mr. Peterson, of the value of $28, but this is denied by plaintiff.

"The defendant further denies that he owes any such amount to the plaintiff and sets up by way of offset certain damages which he claims he suffered by reason of plaintiff's refusal to receive certain hay, which he claims he sold to plaintiff for delivery at Perkins and afterward at Boise City. Defendant claims that the hay became damaged to such an extent that the same became valueless, and that such loss was the result of plaintiff's negligence in failing

to take such hay. (Excepted to by defendant, September 24, 1908.)

''The court instructs the jury that the hay in question, and the whole thereof, as shown by the testimony of the defendant, remained the property of the defendant until the same was actually delivered to the plaintiff, or upon the order of plaintiff; and you are further instructed that it was incumbent upon the defendant to care for and protect such hay from the elements until such time at it was actually delivered to the plaintiff. If the plaintiff, after agreeing to receive the hay, declined to receive the same at the time agreed upon for delivery, then in that event, in order for the defendant to recover damages, he should have established upon the trial that the actual market value of such hay at the time fixed for delivery was less than the contract price. This the defendant has failed to prove, or to introduce any evidence thereon, and the court instructs you that the defendant is not entitled to any damages because of the plaintiff's refusal to receive such hay. (Excepted to by defendant, September 24, 1908.)

''In determining whether or not the defendant is en‑ titled to an offset for the two loads of hay that he claims to have delivered to Mr. Locke and Mr. Peterson, you will determine from the evidence whether this hay was actually· delivered to said plaintiff for and on account of the plain- tiff, and the burden is on the defendant to prove the delivery of such hay by a preponderance of the evidence. And if you find that said hay was so delivered, you will fix the value thereof upon the basis of the contract price of $11 per ton, including interest thereon at the rate of seven per cent per annum from the date of its delivery. (Excepted to by defendant, September 24, 1908.)

''As you have already been instructed, the defendant is entitled to no damages for loss or injury to the hay not delivered, and the only issues involved which are not ad- mitted by the pleadings relate to the two loads of hay which the defendant claims he delivered for plaintiff's ac-

count, the one to Mr. Locke and the other to Mr. Peterson."
(Excepted to by the defendant, September 24, 1908.)

From the pleadings it appears that the plaintiff contends
that it sold and delivered certain goods to the defendant,
and paid the defendant a certain amount of cash for which
it brought the action. These allegations of the complaint
were specifically denied by the answer, and the defendant,
by way of cross-complaint, claimed that the defendant sold
plaintiff a carload of hay consisting of twelve tons at $11
per ton, and that the plaintiff delivered to defendant as
part payment for such hay a pair of scales at the agreed
price of $60 and some baling ties of the value of $1.25 and
cash in the sum of $50, and asked judgment for the balance.

The issue thus presented and upon which proof was
offered, and which the jury should have been given an
opportunity to determine, was: Did the transaction take
place as claimed by plaintiff or as claimed by defendant?

The contract for the sale of the hay appears to have
been made between Mr. Sloan, representing the plaintiff,
and Lambach for himself, and the evidence of both agree
that the defendant sold plaintiff a carload of hay at $11
per ton, and Mr. Sloan says an average car was twelve
tons. Both testify also that the plaintiff delivered to the
defendant as part payment for such hay a pair of scales
at the agreed price of $60 and baling ties of the value of
$1.25, and that plaintiff paid defendant cash in the sum
of $50. These facts are not disputed.

It will thus be seen that the defendant's claim made by
his cross-complaint was not a claim for a setoff against the
plaintiff's demand, but was an affirmative allegation as to
the matters and character of the transaction out of which
the plaintiff sought to recover the sum sued for. The de-
fendant by this cross-complaint was not seeking damages
by reason of a breach of contract, but was seeking to recover
the contract price for which he sold such hay. Notwith-
standing this fact, the trial court took away from the jury
the right to determine the transaction, whether as claimed
by plaintiff or as claimed by the defendant, and told the

jury that the transaction was as claimed by plaintiff, that the defendant set up an offset for damages against the plaintiff's claim, notwithstanding the fact that it is specifically alleged in the defendant's cross-complaint that he sold the hay to the plaintiff at an agreed price and demanded judgment for the contract price, and notwithstanding the fact that the witnesses both for plaintiff and the defendant testified specifically to the sale as claimed by defendant. There was no dispute upon this question. The transaction was proven beyond even a doubt to be as claimed by the defendant, and when the court told the jury that the defendant plead a setoff for damages, such instruction took away from the jury the right to pass upon the issues made by the pleadings. The instruction was clearly erroneous, and invaded the province of the jury.

The court also erred in instructing the jury that the hay remained the property of the defendant until the same was actually delivered to the plaintiff or upon its order, and that if the plaintiff, after agreeing to receive the hay, declined to receive the same, then in order for the defendant to recover damages he should have established upon the trial the actual market value of such hay; and as the defendant did not offer proof upon this question, the defendant was not entitled to any damages because of the plaintiff's refusal to receive such hay. These instructions took away from the jury the question whether there was a delivery, whether the defendant did all that his contract required him to do, whether the acts of the plaintiff were equivalent to actual delivery, and whether the plaintiff waived the actual delivery of such hay; whether the hay was not segregated and accepted by the plaintiff and became plaintiff's property. These were issues made by the pleadings, and all of which were entirely ignored by the court in the instructions given to the jury.

The trouble with the instructions of the court is that they are based upon a wrong conception of the issues made by the pleadings and the evidence and the law applicable thereto. Counsel for respondent argues on this appeal, and the court

seems to have drawn the instructions upon that theory, that the defendant cannot recover the contract price of such hay but is relegated and limited to an action for damages for breach of the contract. The position of counsel for respondent as stated in his brief is as follows:

"Our contention is that there was no sale of hay, but merely an executory contract for such sale. The contract was merely for a carload or about twelve tons of hay from a larger mass, but no particular hay was identified or appropriated; and that the title to the hay never passed. That if appellant had any offset or action against the respondent that action was an action for damages for breach of contract, but defendant neither alleged nor proved any damages, and for that reason, as the court instructed the jury, was not entitled to any offset."

And to support respondent's contention the principle of law relied upon is clearly stated in Mechem on Sales at sec. 721 as follows:

"Upon the making of a contract for the sale of a part of a larger mass of goods, as seen in the last subdivision, or of goods thereafter to be supplied, no particular goods, however, being designated, it is clear that no present title does or can thereby pass. The contract at this point is purely executory, and it cannot be effectual to transfer title until it has become attached to some specific goods upon which it can operate. What is essential now is the *appropriation* of the goods to the contract, and when this occurs the contract becomes executed and the title is transferred."

This may be conceded to be a correct statement of an abstract proposition of law, and if the facts in this case fall within this principle, then the position of respondent would be correct, but the facts do not bring the respondent's case within the law as thus stated, for the evidence is undisputed that the appellant sold the respondent a carload of hay; that appellant segregated and set aside twelve tons of hay, which was considered an average carload, with which to fill the respondent's order. A portion of the hay was actually de-

livered. Part of the purchase price was paid and the appellant offered and tendered actual delivery of the balance.

The final determination, as to the exact number of tons sold under the contract, was only for the purpose of fixing the total amount of money to be paid. So, it will be seen that the facts of this case do not fall under the law as contended for by respondent and as stated in Mr. Mechem on agency. Whether the sale of the hay was complete or the contract merely executory, under the evidence, was a matter for the jury. Such question is usually one of intent of the parties as gathered from their contract and the situation of the thing sold and the circumstances surrounding the sale.

The rule is clearly stated by Judge Cooley in the case of *Byles v. Colier*, 54 Mich. 1, 19 N. W. 565, as follows:

"That the question whether a sale is completed or only executory is usually one to be determined from the intent of the parties as gathered from their contract, the situation of the thing sold, and the circumstances surrounding the sale; that where the goods sold are designated so that no question can arise as to the thing intended, it is not absolutely essential that there should be a delivery, or that the goods should be in deliverable condition, or that the quantity or quality, when the price depends upon either or both, should be determined; these being circumstances indicating intent, but not conclusive."

In the case of *Towne v. Davis*, 66 N. H. 396, 22 Atl. 450, the supreme court of New Hampshire says:

"This [whether the title had passed to a quantity of hay sold at auction] is a question of the intention and understanding of the parties, which is a question of fact."

In the case under consideration the court told the jury that the hay in question, as shown by the testimony of the defendant, remained the property of the said defendant until the same was actually delivered to the plaintiff, thus taking away from the jury the right to determine whether the contract of sale was complete or executory. The court told the jury that it was executory; that the defendant was required to actually deliver the hay before the sale was complete, not-

withstanding the fact that the defendant tendered actual delivery and that the hay was segregated, and that the actual delivery failed only because of the fault of the plaintiff to receive the same. Then the court proceeds to tell the jury that it was incumbent upon the defendant, upon the plaintiff's failure to receive the same, to care for and resell the hay, and that such fact must be shown in order for the defendant to recover damages. As has been heretofore shown the defendant was not seeking to recover damages. He was attempting to recover the contract price for which the plaintiff agreed to pay the defendant for the hay sold.

In the case of *Lassing v. James,* 107 Cal. 348, 40 Pac. 534, the supreme court of California says:

"In a case like the present, where the title to personal property has passed, there is no obligation resting upon the vendor to resell. In many cases he would have no right to resell, and possibly would be guilty of an act of conversion if he exercised any such dominion over the property, but, upon the facts of this case, under any principle of law which appellant might advance, Lassing had the right to choose his remedy, as between suing for the entire purchase price or selling the property and bringing an action for the difference in case the sale resulted in a loss. (*Hunter v. Wetsell,* 84 N. Y. 555, 38 Am. Rep. 544; *Dustan v. McAndrew,* 44 N. Y. 72; *Van Horn v. Rucker,* 33 Mo. 391, 84 Am. Dec. 53.)"

So in the case at bar, the hay was segregated. The actual delivery was made in so far as it was possible for the defendant to actually deliver such hay; the contract was complete; the title passed to the plaintiff and the defendant would have had no right to sell or dispose of the hay. It was not his property to sell and, as said by the supreme court of California, "under any principle of law which appellant might advance," Lambach had the right to choose his remedy, as between suing for the entire purchase price or selling the property and bringing an action for the difference in case the sale resulted in a loss.

The author in 24 Ency. of Law, at page 1045, deduces the general rule from all the authorities as follows:

"After the formation of a contract of sale, the question of its effect arises as to when the bargain amounts to an actual sale or when it is a mere executory agreement. The distinction between the two contracts consists in this: that in a bargain and sale the thing which is the subject of the contract becomes the property of the buyer the moment the contract is concluded, and without regard to the fact whether the goods be delivered to the buyer or remain in possession of the seller; whereas, in an executory agreement, the goods remain the property of the seller till the contract is executed. . . . . In determining whether title has or has not passed by the contract, the primary consideration is one of intention."

In the case under consideration the court took away from the jury the question of the effect of the contract made, took away from the jury the right to determine the intention of the parties as to whether the sale was complete or the contract merely executory. If there had been no evidence at all showing or tending to show that the contract of sale was complete, so far as the sale was concerned, and that the actual delivery was an act to be performed before the sale was complete, then the court might have concluded as a matter of law that there was no sale. But such is not the evidence.

In the case of *Coffin v. Bradbury,* 3 Ida. 770, 95 Am. St. 37, 35 Pac. 715, this court held:

"When from the entire evidence different minds might honestly reach a different conclusion, as to the acceptance of the property sold, the question of acceptance is one of fact for the jury, and their verdict thereon will not be disturbed."

This principle of law very aptly applies to this case. If different minds might reach different conclusions as to whether the contract was a completed sale or merely an executory agreement to sell, then the question became one of fact and should have been left to the jury for determination.

The court was clearly in error in instructing the jury as a matter of law that the title to the hay did not pass, but

remained the property of the defendant, for this instruction does not take into consideration or leave for determination of the jury the intention of the parties as to whether the sale was complete at the time the contract was made. (*Holley v. St. Louis etc. Ry. Co.*, 34 Mo. App. 202; *Graff v. Fitch*, 58 Ill. 379; *Hatch v. Standard Oil Co.*, 100 U. S. 124, 25 L. ed. 554; 24 Am. & Eng. Ency. of Law, 1047, 1048.)

In view of the evidence in this case, the court was clearly in error in taking the issues of fact away from the jury and determining such question by the instructions given. The judgment of the district court is *reversed,* and a new trial ordered. Costs awarded to *appellant.*

Sullivan, C. J., and Ailshie, J., concur.