(May 8, 1926.)

WILLIAM M. ELLIOTT, Respondent, v. L. T. POPE, Appellant.

[247 Pac. 796.]

CONTRACTS—AGREEMENT· TO REDUCE CONTRACT TO WRITING—SALES— EVIDENCE.

1. Whether verbal arrangement, with agreement to reduce contract to writing, creates binding contract until so reduced depends on intention of parties, in view of C. S., sec. 5691, Rule 4, subd. 2.

2. Evidence *held* sufficient to support verdict that sale of personal property under oral contract with delivery to buyer was completed sale, passing title to buyer, notwithstanding agreement that contract should be reduced to writing.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Raymond L. Givens, Judge.

Action in claim and delivery. Judgment for plaintiff. *Affirmed.*

J. P. Pope, for Appellant.

Where a party claims that a contract was completed before a contemplated written draft was signed, the burden of proof rests upon such party to establish such claim by a preponderance of the evidence. (*Mississippi & Dominion Steamship Co. v. Swift,* 86 Me. 248, 29 Atl. 1063; *American Hawaiian S. S. Co. v. Willfuehr,* 274 Fed. 214; *L. J. Upton & Co. v. Colbath,* 122 Me. 188, 119 Atl. 384.)

---

Publisher's Note.

1. Agreement to reduce contract to writing, see note in 29 L. R. A. 431. See, also, 6 R. C. L. 618.

2. See 24 R. C. L. 37.

See Contracts, 13 *C. J.,* sec. 100, p. 292, n. 25 New.
Sales, 35 Cyc., p. 83, n. 7; p. 86, n. 26; p. 87, n. 38.

Where some of the terms of a proposed contract are not settled, and it is agreed that a formal contract will be prepared and signed embodying all of the terms, there is no binding contract between the parties until such written contract is executed. (*Methudy v. Ross,* 10 Mo. App. 101; *Locomotive Co. v. Bergdoll,* 192 Fed. 447; note, 29 L. R. A. 433, 434; *Eads v. Carondelet,* 42 Mo. 113.)

Where the parties understand that the contract which is to be drawn and signed by both parties will constitute the agreement, there is no binding contract until reduced to writing and signed by both parties. (*Morrill v. Tehema Consol. Min. Co.,* 10 Nev. 125; *Morrow v. Southern Express Co.,* 101 Ga. 810, 28 S. E. 998; *American Refrigerator Transit Co. v. Chilton,* 94 Ill. App. 6; *Savannah Ice Delivery Co. v. American Ref. Transit Co.,* 110 Ga. 142, 35 S. E. 280; *McDonnell v. Coeur d'Alene Lumber Co.,* 56 Wash. 495, 106 Pac. 135; *Meacham v. Pederson,* 70 Wash. 479, 127 Pac. 114; *Spinney v. Downing,* 108 Cal. 666, 41 Pac. 797; *Las Palmas Winery & Distillery v. Garrett & Co.,* 167 Cal. 397, 139 Pac. 1077; *Sam Aftergut Co. v. Mulvihill,* 25 Cal. App. 784, 145 Pac. 728; *Congdon v. Darcy,* 46 Vt. 478; note, 29 L. R. A. 434–436.)

Where want of mutuality is due to failure of minds to meet in the making of a contract, partial performance is unavailing to establish such contract. (Note, 8 L. R. A., N. S., 433.)

J. R. Smead, for Respondent.

The transfer of title from seller to purchaser is a question of the intention of the parties to be ascertained from all the circumstances of the case. (C. S., sec. 5690.)

Where, pursuant to a contract to sell, the seller delivers the goods to the buyer, it is presumed that he has "appropriated the goods to the contract" unconditionally; in other words, that the title has passed. (C. S., sec. 5691, Rule 4, par. 2; Williston, Sales, secs. 278, 279.)

On the question of when title passes, intention of the parties is the governing feature, which is a question of fact.

If there is any doubt about it, the question is one for the jury. (Williston, Sales, secs. 261 and 262; *Carlson v. Crescent etc. Co.,* 20 Ida. 794, 120 Pac. 460; *Idaho Implement Co. v. Lambach,* 16 Ida. 497, 101 Pac. 951.)

The rights of the parties in a transaction of sale must be determined from the circumstances of the case, and not from undisclosed purposes of the parties nor from their understanding of the legal effect of their agreements or acts. (*Foster v. Ropes,* 111 Mass. 10.)

While delivery is not necessarily essential to the passing of title, it almost certainly shows an intent that the title shall pass with the delivery, unless title is expressly reserved by agreement. (Mechem, Sales, secs. 484–493; Williston on Sales, sec. 265, p. 533, and note 38.)

JOHNSON, District Judge.—This is an action in claim and delivery to recover possession of a Smalley hay cutter and elevator, with one set of knives therefor.

Respondent, the plaintiff below, alleged the value of $800, and claimed damages for the wrongful detention of said property in the sum of $500. Appellant denied that he was unlawfully withholding possession of said property and claimed that he was the owner and entitled to the possession thereof, and by way of cross-complaint he set forth three separate causes of action, in each alleging ownership in himself, and he also alleged that respondent used and operated the machine from November 22, 1922, to December 24, 1922, and claimed $200 for its use during said period. He further alleged that the machine was damaged to the extent of $30.40 by its negligent, careless and improper use, and that respondent wrongfully detained the machine and one set of knives to the value of $68, also a tool-box and extra parts to the value of $25.

The jury returned a verdict in favor of the respondent for the possession of the property, found the value to be $800, and awarded him $200 damages for the unlawful detention thereof by appellant. This appeal is from the judg-

ment entered on the verdict and also from an order deny.-
ing a motion for a new trial.

Practically the only issue to be determined is whether or
not the respondent was the owner of the property. The evi-
dence discloses that the appellant had owned the property,
and that his brother had an interest therein to the extent
of $250. The machine had been purchased by appellant
some three years before the commencement of this action.
It had been used last by appellant and had stood outside
exposed to the elements for some nine months. Desiring to
dispose of said property he sought out respondent and be-
gan negotiations for the sale of the machine to respondent.

The respondent owned a tractor that would furnish mo-
tive power to run the machine. Conversations occurred
between the parties on three different occasions up to the
time respondent took possession of the machine at the re-
quest of appellant. The first talk between the parties was
general in its character. Appellant stated the price, what
the machinery consisted of, how much it would cost to cut
hay, and how much there would be to cut. Not much was
said at this first conversation as to terms. On the next
occasion appellant came to respondent's place and the price
and terms of purchase were arranged between the parties.
Respondent was to pay for the machine out of the net pro-
ceeds of its operations at the rate of 40¢ a ton for hay cut
until $250 was paid. After that it was to be half that
much. The machine was to be paid for in two years. Re-
spondent agreed to purchase the property on these terms.
A few days after this appellant again sought out respondent
at the latter's home. The parties again talked the matter
over and appellant stated that he had purchased his broth-
er's interest in the machine for $250 and that he wanted
the machine used until this $250 was paid and after that
respondent could have two years to pay the balance. The
machine at this time was at Notus and appellant agreed to
allow respondent $20 on · the purchase price to bring the
machine to respondent's place. Appellant produced a note
for $650 made out in his favor and stated that he had to

go to Kansas City and that he wanted respondent to sign the note, and respondent did sign the note. Respondent went to Notus and got the machine as directed by appellant.

It was also agreed prior to the signing of the note that respondent, whose brother is an attorney, should have his brother reduce the oral agreement to writing and that when appellant returned they would substitute the written agreement for the note. The note so signed contained no reservation as to title and is not a conditional sales note. The respondent is positive in his testimony that nothing was said as to the title remaining in appellant at any time. The evidence of appellant is not clear that he mentioned anything about his retaining title until after his return from Kansas City. After his return from Kansas City a written contract was prepared by respondent's brother which contained no reservation of title, while a written contract prepared by appellant's attorney contained a reservation of title.

The question before the jury was, did the parties to the sale agree that the title should remain in appellant until the property was paid for. In other words, was it a sale or a conditional sale. The evidence upon this point is conflicting. It was submitted by the court to the jury in the following instructions:

"You are instructed that it is your duty to determine whether plaintiff or defendant was entitled to the possession of the property in controversy at the time it was taken by defendant, on or about December 24, 1922, and in determining this question it is your duty to determine whether plaintiff and defendant made a complete and binding agreement covering the sale and possession of the property.

"There must be a meeting of the minds of the parties before a contract is complete. Where parties are merely negotiating as to the terms of an agreement to be entered into between them, there is no meeting of minds while such agreement is incomplete.

"If you find from the evidence that a contract was completed and entered into between the plaintiff and defendant it will then be your duty to find what the contract is; and if you should find that, as a part of such agreement, it was understood between plaintiff and defendant that defendant retained title to the said personal property, and would be entitled to the possession of the same in case plaintiff failed to comply with the terms of such contract in the making of payments or otherwise, and you further find that plaintiff failed to comply with the terms of such contract, then you should find a verdict for the defendant.

"If you find that plaintiff became the owner of the property in question at the time of the sale, that is, that the defendant Pope did not reserve the title until the property was paid for, then your verdict should be for the plaintiff. If you so find for the plaintiff, your verdict should be in the alternative, that is, the verdict should be for the immediate return of the property to the plaintiff, or, in case the property cannot now, for any reason, be returned to plaintiff, for the value of the property, which value you must fix in accordance with the rule of law which I am now about to state to you."

[1] Appellant's principal contention is that where parties have a verbal arrangement in which it is agreed that the contract shall be reduced to writing before it should be binding, there is no binding contract until it has been reduced to writing and signed by both parties.

6 Ruling Case Law, at p. 618, states the law as follows:

"Where contracting parties agree to reduce their contract to writing, the question whether their negotiations constitute a present contract usually depends upon their intention, or, as it is sometimes expressed, upon whether they intend the writing to be a condition precedent to the taking effect of the contract. The expression of the idea may be attempted in other words: if the written draft is viewed by the parties merely as a convenient memorial or record of their previous contract, its absence does not affect the binding force of the contract; if, however, it is viewed as the consummation of

the negotiation, there is no contract until the written draft is finally signed. . . . . Circumstances which have been suggested as being helpful in determining the intention of the parties are; whether the contract is one usually put in writing; whether there are few or many details; whether the amount involved is large or small; whether it requires a formal writing for a full expression of the covenants and promises; and whether the negotiations themselves indicate that a written draft is contemplated as the final conclusion of the negotiations. It is said, moreover, that the burden of proof is on the party claiming that the contract was completed before the written draft was signed. However, if the parties act under the preliminary agreement or receive benefits thereunder, they will be held to be bound notwithstanding the fact that a formal contract has never been executed.''

This court, in the case of *Idaho Implement Co., Ltd., v. Lambach,* 16 Ida. 497, at page 510, 101 Pac. 951, 955, stated the rule in the following language:

''Whether the sale . . . . was complete, or the contract merely executory, under the evidence, was a matter for the jury. Such question is usually one of intent of the parties as gathered from their contract and the situation of the thing sold and the circumstances surrounding the sale.

''The rule is clearly stated by Judge Cooley in the case of *Byles v. Colier,* 54 Mich. 1, 19 N. W. 565, as follows:

'' 'That the question whether a sale is completed or only executory is usually one to be determined from the intent of the parties as gathered from their contract, the situation of the thing sold, and the circumstances surrounding the sale; and that where the goods sold are designated so that no question can arise as to the thing intended, it is not absolutely essential that there should be a delivery, or that the goods should be in deliverable condition, or that quantity or quality, when the price depends upon either or both, should be determined; these being circumstances indicating intent, but not conclusive.'

''In the case of *Towne v. Davis,* 66 N. H. 396, 22 Atl. 450, the supreme court of New Hampshire says:

" 'This (whether the title had passed to a quantity of hay sold at auction) is a question of the intention and understanding of the parties, which is a question of fact.' "

Again, in the case of *Carlson v. Crescent etc. Box Mfg. Co.*, 20 Ida. 794, 120 Pac. 460, this court said:

"The question as to when title passes under a contract of sale of personal property is one of intention of the parties, and it is stated in 24 Am. & Eng. Ency. of Law, p. 1047, as follows:

" 'In determining whether the title has or has not passed by the contract, the primary consideration is one of intention. The agreement is what the parties intended to make it. If the intention is manifested clearly and unequivocally, it controls. What was the intention of the parties is a question for the jury to be determined under proper instructions from the court.' "

The Uniform Sales Law, as appears by C. S., sec. 5691, Rule 4, subd. 2, provides:

"Where, in pursuance of a contract to sell, the seller delivers the goods to the buyer, or to a carrier or other bailee (whether named by the buyer or not) for the purpose of transmission to or holding for the buyer, he is presumed to have unconditionally appropriated the goods to the contract, except in the cases provided for in the next rule and in section 5692. This presumption is applicable, although by the terms of the contract, the buyer is to pay the price before receiving delivery of the goods, and the goods are marked with the words 'collect on delivery' or their equivalents."

The appellant took possession of the property involved from the respondent. The respondent commenced this action to recover possession, and it being one in claim and delivery and not an action for breach of contract, many of the authorities cited in appellant's brief are not in point.

The appellant admitted the taking but denied that ownership and right of possession was in the respondent. The facts clearly brought the case within the law of sales. The question as to whether the sale was a completed sale which

passed title to respondent or whether title was reserved in appellant was squarely before the jury and the jury determined that question in favor of respondent.

There is no testimony to support the theory that the sale was not to take effect until the agreement was reduced to writing and signed by both parties. In fact, the attorneys for each of the parties who drew the written contracts of sale nearly a month after the oral agreement treated the transaction as a sale. The attorney for appellant dated it as in effect from November 15, 1922, while the attorney for respondent dated it as November 17, 1922. The attorney for appellant reserved title in appellant, while the attorney for respondent left out such reservation.

[2] We believe that there is ample evidence to support the verdict of the jury. We have examined the other errors assigned and feel that it is unnecessary to discuss them as they are without merit.

The judgment is affirmed, with costs to respondent.

William A. Lee, C. J., and Taylor, J., concur.

Wm. E. Lee, J., did not sit at the hearing and took no part in the decision.

BUDGE, J., Dissenting. — Respondent, plaintiff below, brought the action out of which this appeal grows in claim and delivery to recover possession, or the value thereof, of a certain hay-cutting machine and attachments, together with damages for the unlawful taking and detention of the same by appellant. The complaint alleged ownership of the machine by respondent which was denied by appellant in his answer, the taking of the machine by appellant being admitted. The cause was tried to the court and a jury and a verdict was returned for respondent that he was entitled to the possession of the property claimed and that the same should be returned to him (its value being fixed at $800), and that respondent was also entitled to the sum of $200 as damages for the unlawful detention of

the property by appellant. An appeal has been taken from the judgment entered on the verdict and from an order denying a motion for new trial.

The main issue in the case is as to the ownership of the property, and the sufficiency of the evidence to sustain the verdict of the jury in finding that respondent was entitled to the possession of the same is questioned by appellant. A holding as to the sufficiency of the evidence therefore is decisive.

Appellant owned the machine originally, and about November 1, 1922, began negotiations with respondent for the sale of the same to the latter. Conversations between the parties were had on three different occasions before the property was turned over to respondent. No understanding was reached at the first meeting. About two days after the first conversation appellant went to the home of respondent and the negotiations were continued, appellant desiring a cash payment of $250 and respondent stating that he could not make a cash payment but that he would pay the $250 out of net proceeds received from cutting hay at the rate of 40¢ a ton until the first $250 was paid, after that appellant to receive a lesser amount of the net proceeds from the use of the machine by respondent until the full amount of the purchase price, $900, was paid. Some few days after the second conversation appellant again went to the home of respondent and told the latter that he, appellant, was going to Kansas City and would like the respondent to sign a note for $650 (being the balance due on the purchase price after payment of the first $250), and that upon his, appellant's, return they would sign a written contract embodying the terms of the agreement for the sale of the property. It was the understanding of the parties that the note was only temporary and was simply to hold until the written agreement could be drawn up.

Respondent read the note carefully and signed and delivered it to appellant. It called for the payment of $650 twelve months after date, with interest at the rate of eight per cent per annum payable at maturity, but after maturity

the rate of interest to be twelve per cent. The note was a printed form and contained a provision as to deposit with the payee (appellant) of the property which was the subject of the negotiations, and while perhaps not material, such provision in the note might have some bearing as evidencing the intention of appellant not to part with title to the property until the full consideration was paid.

Shortly after the execution of the note above mentioned respondent took possession of the machine and began using it in the cutting of hay for himself and others. Both parties thereafter had written contracts prepared, the one proposed by appellant containing a clause reserving title to the property in himself, while respondent's draft did not contain such a provision. Neither of these instruments was signed, although there were several interviews between appellant and respondent in an effort to reach a final agreement. After the respondent had used the machine about a month and paid no part of the receipts derived from its use to appellant (it being respondent's contention that he was holding up moneys due to appellant until a contract was signed), the latter repossessed the property.

Both of the parties being in accord that the agreement which was to be binding upon them was a written contract to contain the terms of the purchase and sale, and that the arrangements up to the time of signing such a contract were merely temporary and abided the execution of a written agreement, the question is whether title to the property in dispute ever passed from appellant to respondent in the absence of the signing of a written contract. The statement of the proposition would seem to contain its answer.

Where contracting parties agree to reduce their contract to writing, the question whether their negotiations constitute a present contract usually depends upon their intention, that is, whether they intend the writing to be a condition precedent to the taking effect of the contract. If the written draft is viewed by the parties merely as a convenient memorial or record of their previous contract, its absence does not affect the binding force of the contract;

if, however, it is viewed as the consummation of the nego-
tiation, there is no contract until the written draft is
finally signed. Where the writing is regarded as a pre-
requisite to the closing of the contract, the contract does
not become binding if there has been a failure to reduce it
to writing. (6 R. C. L. 618, sec. 39.)

In the application of the rule above stated, it is to be
remembered that the intention of the *parties* is controlling,
and not the intention of but *one* of them. So that, if appel-
lant, in the understanding had between himself and re-
spondent that the contract was to be reduced to writing,
had in mind that the written (binding) agreement was to
contain a provision that title to the property was not to
pass until the purchase price was fully paid, then there was
no meeting of the minds, and hence there could be no com-
pleted contract until the parties signed the writing contain-
ing terms agreeable to *both* of them. There is no doubt
that it was the intention of appellant to retain title to the
property pending payment therefor in full.

Under the most favorable view of the evidence adduced
by respondent it cannot be said that he established by a
preponderance of the proof that the negotiations for the
purchase of the property constituted a completed contract
in the absence of the signing of a written agreement, which
being true, title was never transferred to respondent and he
could not maintain an action for its recovery. The judg-
ment should be reversed.