697 P.2d 1201

**MILLER CONSTRUCTION COMPANY,**
an Idaho corporation,
Plaintiff-Respondent,

v.

**STRESSTEK, A DIVISION OF L.R.
YEGGE, CO., and L.R. Yegge, Co.,**
a corporation, Defendants-Appellants.

No. 14541.

Court of Appeals of Idaho.

March 22, 1985.

Jeffrey E. Rolig of Hepworth, Nungester & Felton, Twin Falls, for defendants-appellants.

John R. Coleman of Coleman & McIntyre, Twin Falls, and Mary McIntyre Cecil of Lukins and Annis, Spokane, Wash., for plaintiff-respondent.

SWANSTROM, Judge.

Miller Construction Company brought suit for breach of contract against Stresstek. Miller sought to recover the difference between the amount it paid a subcon-

tractor for work done on a highway overpass and the amount bid for the same work by Stresstek. Miller alleged that the parties had an oral contract for the work, while Stresstek maintained that it was not bound because it had not signed a written contract. The district court held that a written contract, although contemplated by the parties, was a mere formality and that Stresstek was bound by an oral contract to do the work. Stresstek appealed. We affirm and award Miller attorney fees on appeal.

Stresstek raises three issues: (1) whether the district court erred in finding that a written contract was only a formality and that a contract came into existence by oral agreement; (2) whether the court erred by considering parol evidence to determine whether Miller had accepted Stresstek's bid; and (3) whether the court erred in refusing to grant Stresstek an involuntary dismissal at the close of Miller's case.

In 1973, Miller submitted a bid to the general contractor covering the construction of a portion of U.S. Highway 80 near Bliss, Idaho. Before making its bid, Miller had solicited bids for "post-tensioning" concrete girders for a highway overpass it was to construct. It is disputed who contacted whom first—Miller claims Stresstek telephoned to submit a bid; Stresstek claims it was telephoned by Miller and was requested to submit a bid. In any event, Stresstek was the low bidder and Miller used its figure in making a bid to the general contractor. Miller was awarded the subcontract in January 1974 and contends it immediately informed Stresstek that Stresstek was to do the post-tensioning work. Stresstek denies being informed its bid was accepted, but acknowledges that various conversations between the two companies occurred over the next few months.

It is undisputed both parties contemplated that a written agreement would be executed. In fact, such an agreement was

required by the state. The parties differ, however, as to the legal effect of the proposed written agreement—Miller argues it was only a formality, while Stresstek insists it was a condition precedent to the formation of the contract. In June 1974, a written sub-subcontract was sent to Stresstek for signatures. Stresstek refused to sign, stating several reasons: (1) the steel for the project would not be available until mid-1975; (2) the bid was effective for only thirty days after its submission and the written contract was submitted far too late; and (3) the price of steel had risen one hundred percent since the time the bid was submitted. A fourth reason, that the written contract did not include seven "conditions" imposed by Stresstek, as part of its bid, apparently was not raised until after the action had been brought.[1] As a result of Stresstek's failure to sign the contract, Miller was forced to hire another company, at a substantially higher cost, to do the work.

I

The first issue we will discuss is whether a contract arose without the necessity of a writing.

In order for a contract to exist, a distinct understanding common to both parties is necessary.... Whether a contract exists when contracting parties agree to reduce their agreement to writing, is a question of the parties' intent.... Where it is clear that one party has agreed that an oral agreement must be reduced to writing before it shall be binding, there is no contract until a formal document is executed....

*Mitchell v. Siqueiros*, 99 Idaho 396, 400, 582 P.2d 1074, 1078 (1978) (citations omitted). Stresstek contends that it did not intend to be bound prior to reduction of the agreement to writing. The district court, however, found that Stresstek's bid was

---

1. The seven conditions were that Miller would (1) supply truck access and unloading and hoisting facilities for all materials at the job site; (2) construct a work platform at each end of the tendon; (3) supply carpenters and concrete work for anchorage recesses; (4) supply air, water and electricity to the site; (5) repair any damage to sheathing, subsequent to installation; (6) supply heating to protect tendon grout; and (7) provide work area for tendon fabrication.

accepted by Miller on January 22 or 23, 1974, and that Miller had agreed to the seven conditions Stresstek placed on its bid. The court further found that the parties had not intended, when the oral agreement was reached, to be bound only if the agreement were reduced to writing. The written contract was a formality, necessary to comply with state regulations, but unnecessary to the parties' intent to be bound by their offer and acceptance. The district court's findings will not be set aside unless they are clearly erroneous. I.R.C.P. 52(a).

In determining the parties' intent several factors have been suggested as helpful. They are:

> whether the contract is one usually put in writing; whether there are few or many details; whether the amount involved is large or small; whether it requires a formal writing for a full expression of the covenants and promises; and whether the negotiations themselves indicate that a written draft is contemplated as the final conclusion of the negotiations. It is said, moreover, that the burden of proof is on the party claiming that the contract was completed before the written draft was signed. However, if the parties act under the preliminary agreement or receive benefits thereunder, they will be held to be bound notwithstanding the fact that a formal contract has never been executed.

*Elliott v. Pope*, 42 Idaho 505, 511, 247 P. 796, 797 (1926) (quoting 6 RULING CASE LAW 618). *See also* RESTATEMENT (SECOND) OF CONTRACTS § 27 comment c (1981) (hereinafter referred to as *Restatement*). Naturally, the task of weighing these factors and thus determining intent is in the first instance the responsibility of the trier of fact. After analyzing the evidence in light of *Elliott*, we hold that the district court's findings were not clearly erroneous.

Employing the *Elliott* criteria, we note, first that a subcontractor's contract, such as the one here, is usually one put in writing. This is borne out, at least in this case, by the fact that the written contract sent to Stresstek was a form contract which, according to Dickerson, Miller's construction superintendent, was "sent [to] all of our subcontractors to sign." Second, we also recognize that a subcontractor's contract is often very detailed. Dickerson testified, however, that a large number of these details are standard provisions common to all such contracts. A written document which consists only of these standard provisions is more likely, in our view, to be a mere formality than a necessity. No writing would be required to inform the parties of their rights and responsibilities, and to assure them there was a meeting of the minds because there could be no dispute regarding these standard provisions. More important to a determination of intent are those additional provisions peculiar to the specific contract in question. A contract containing a large number of nonstandard provisions might require a writing for the protection of all parties concerned. In this case, the dispute centers around the seven conditions imposed by Stresstek. Stresstek maintains that the omission of these conditions from the written document signified that the parties had failed to reach agreement on these conditions. Miller argues, on the other hand, that the conditions were so basic or insignificant as to render unnecessary their inclusion in the written document.

Third, the amount involved in the contract, while certainly relevant, is highly subjective. We note only that the bid was $44,324. Fourth, the parties also dispute whether a written contract was necessary for a "full expression of the covenants and promises." Miller contends it was unnecessary to set out every minute detail in the written document. Dickerson testified that the seven conditions are assumed included in every contract. Fifth, the negotiations, far from showing that a written document was considered a necessary precedent to the formation of a binding contract, showed just the opposite. The record reveals Stresstek was informed that its bid was being used by Miller in the bid to the general contractor and that if Miller received the bid, Stresstek would be awarded

the subcontract. Furthermore, there was testimony to the effect that Miller informed Stresstek that "it looked like [Miller was] going to get the job and that [Stresstek] would be awarded the subcontract when [Miller] got it." Finally, regardless of whether a written contract was required, the parties acted under the oral agreement in preparation for performance. Plans and specifications were sent to Stresstek. Miller also asked only Stresstek to calculate the effect on the bid of proposed changes in the overpass. In response to the calculations made by Stresstek, the changes were abandoned.

Stresstek, however, points to Dickerson's testimony that Miller would not have allowed Stresstek to perform absent a written contract. This testimony is not inconsistent with the district court's findings. Stresstek could *not*, in fact, have performed under state regulations absent a written contract. Nevertheless, a binding contract as between Stresstek and Miller could have arisen prior to reduction to writing of the terms of the bid proposal. If an oral contract had existed, then Stresstek would have been obligated to do everything necessary to perform that contract, including signing a written contract to satisfy the requirements of the state. *See Restatement* § 27 comment a.

In sum, the *Elliott* criteria cut both ways when applied to this case. We have deliberately refrained from independently weighing all the above factors. Suffice it to say that there is conflicting evidence. Under these circumstances, we hold that the district court did not commit clear error by determining that a written contract, while contemplated by the parties, was merely a formality and that they intended to be bound by their oral agreement.

## II

■■■ The second issue is whether the district court erred by considering parol evidence to determine whether Miller had accepted Stresstek's bid. Stresstek argues that the court should only have looked at the language of the written contract to determine if a valid acceptance had been made. The parol evidence rule is a rule of contract interpretation which forbids the admission of evidence concerning prior or contemporaneous agreements for the purpose of varying or contradicting a later writing. Thus, in the case of a fully integrated and executed written contract, the intent of the parties must be determined by reference to the writing and not to prior or contemporaneous agreements. However, "[t]he parol evidence rule comes into play only when the last expression is in writing *and is a binding contract.*" J. CALAMARI & J. PERILLO, THE LAW OF CONTRACTS § 3–2 at 99 (2d ed. 1977) (emphasis added). We note that neither party signed the written contract; therefore, the parol evidence rule does not apply. Evidence of the oral acceptance by Miller of Stresstek's bid was properly admitted.

## III

■■■ The third issue on appeal is whether the district court erred in refusing to grant Stresstek an involuntary dismissal at the close of Miller's case. Idaho Rule of Civil Procedure 41(b) provides in part:

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts *may* then determine them and render judgment against the plaintiff or *may* decline to render any judgment until the close of all the evidence. [Emphasis added.]

The power to decline to render judgment at the close of the plaintiff's case is thus within the discretion of the trial court. Absent a clear abuse of that discretion, we will not overturn the decision of the trial court.

Here, when ruling on defendant's motion, the district court stated: "But there are some things in this case which are not

complete, and I am not satisfied with granting judgment either way on the file as it now stands." Stresstek urges us to interpret this statement to mean that the court ruled Miller had failed to carry its burden of proof. We are not persuaded to attribute such a meaning to the judge's remarks. Rather, we believe the judge merely intended either to deny the defendant's motion at that time or he was simply reserving decision on the motion until the close of all of the evidence. In either event, it makes no difference in the final outcome.

> "[A] denial of defendant's motion amounts to nothing more than a refusal to enter judgment at that time. At most it constituted a tentative and inconclusive ruling on the quantum of plaintiff's proof. Certainly it did not preclude the trial judge from later making considered findings and determinations not altogether consistent with his prior tentative ruling."

9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2371 at 222 (1971) (quoting *Armour Research Foundation of Illinois Institute of Technology v. Chicago, R.I. & P.R. Co.,* 311 F.2d 493, 494 (7th Cir.1963), *cert. denied,* 372 U.S. 966, 83 S.Ct. 1091, 10 L.Ed.2d 129 (1963)). If the motion is denied, the defendant may go ahead and offer evidence.

> If the defendant does offer evidence after his motion to dismiss at the close of the plaintiff's evidence is not granted, he waives his initial motion and the right to appeal any error committed in the disposition of the motion. The significance of this is that on appeal from a final judgment the court will look to all of the evidence and not merely that put in as part of the plaintiff's case.

*Id.* § 2371 at 221 (quoted in *Pollard v. Land West, Inc.,* 96 Idaho 274, 279, 526 P.2d 1110, 1115 (1974)).

> Denial of a motion for involuntary dismissal is not appealable. The denial is reviewable on a final judgment though if the motion was on the ground of insuffi-

ciency of the evidence the courts say that on appeal they will consider all the evidence rather than only what was before the court when the motion to dismiss was made.

C. WRIGHT & A. MILLER, *supra,* § 2376 at 247. Assuming, but not deciding, that the trial judge intended to reserve his ruling and have it apply to all of the evidence at the close of the case, we hold that the trial court's ultimate denial of the motion is reviewable as noted by WRIGHT & MILLER. Our standard of review on appeal from the judgment requires us to view all of the respondent's evidence as being true and we must afford every inference favorable to respondent that may legitimately be drawn from such evidence. We have reviewed the evidence in that light and conclude that it was sufficient. Therefore, we hold that the district court did not commit error in denying the motion for involuntary dismissal.

■ Finally, Miller requests attorney fees under I.C. § 12–121. Such an award can only be made where an appeal is brought, pursued or defended frivolously, unreasonably or without foundation. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979). Upon this issue we echo our statements in *Scott v. Castle,* 104 Idaho 719, 726–27, 662 P.2d 1163, 1170–71 (1983):

> In this appeal, Scott has not been able to point to any findings of fact which were clearly, or even arguably, unsupported by substantial and competent evidence. On some points the evidence was conflicting but it is not our function to second-guess a trial court on conflicting evidence. *See T-Craft Aero Club, Inc. v. Blough,* 102 Idaho 833, 642 P.2d 70 (Ct. App.1982). Moreover, we have not been asked to establish any new legal standards, nor modify or clarify any existing standards. Rather, the narrow focus of this appeal has been the application of settled law to the facts. There was no showing that the trial court misapplied the law. *Compare Christensen v. Idaho Land Developers, Inc.,* 104 Idaho 458,

660 P.2d 70 (Ct.App.1983). In our view, this appeal was brought and pursued unreasonably and without foundation. Accordingly, we award attorney fees on appeal to Castle, in an amount to be determined as provided in I.A.R. 41(d).

We also here award Miller attorney fees on appeal, in an amount to be determined as provided in I.A.R. 41(d).

The judgment of the district court is affirmed. Costs and attorney fees to respondent, Miller Construction Company.

WALTERS, C.J., and BURNETT, J., concur.