394 P.2d 304

John Ivan ANDRUS and Susie D. Andrus, Husband and Wife, and John Ivan Andrus, Jr., and Margie W. Andrus, Husband and Wife, Plaintiffs, Appellants and Cross-Respondents,

v.

Harold IRICK and Norma Irick, Husband and Wife, Defendants, Respondents, and Cross-Appellants.

No. 9219.

Supreme Court of Idaho.

July 22, 1964.

Gee, Hargraves & Armstrong, Pocatello, for appellants and cross-respondents.

Jones, Pomeroy & Jones, Pocatello, for respondents and cross-appellants.

McFADDEN, Justice.

Petition for rehearing having been granted, and the cause reheard, the previous opinion is withdrawn, and this opinion issued in lieu thereof.

We shall dispose of the issues presented, in this order: first by defendants' cross-appeal; and second by plaintiffs' appeal.

## DEFENDANTS' CROSS APPEAL

Plaintiffs, appellants and cross-respondents herein (hereinafter referred to as plaintiffs), instituted this action to rescind a certain real estate contract wherein they were the purchasers and the defendants (respondents and cross-appellants), were the vendors. By their complaint the plaintiffs claim misrepresentation and such nondisclosure of material facts by the sellers as to entitle them to a rescission of the contract or for damages. After trial on the issues presented by the pleadings, the trial court rendered its Memorandum Decision on October 26, 1961, and on November 14. 1961, entered findings of fact, conclusions of law and judgment for defendants.

On February 23, 1962, plaintiffs moved the Court for an order setting aside this judgment on the ground that the same was taken by mistake, inadvertence, surprise or excusable neglect on the part of the plaintiffs and their counsel. This motion was accompanied by affidavits of their counsel, two of the plaintiffs, and of a stenographer employed in counsel's office. On March 5, 1962, a supplemental motion was filed seeking to set aside the judgment, wherein it was asserted the plaintiffs deserve relief from the operation of the judgment on the

ground that the court should re-open the judgment, take additional testimony, amend and make new findings of fact and conclusions of law and enter a judgment for plaintiffs.

Affidavits were filed by the defendants in opposition to plaintiffs' affidavits. The trial court heard testimony on the issues as to whether the cause should be again reopened. After the hearing, by its order of April 19, 1962, the trial court denied plaintiffs' supplemental motion of March 5, 1962, but granted their motion of February 23, 1962, to set aside the judgment and ordered entry of a new judgment. The Court's order among other things provided:

"IT IS FURTHER ORDERED That defendants' counsel prepare for the signature of the Court a new judgment bearing date of April 19, 1962. Said judgment to contain the same words and phrases of that judgment dated November 14, 1961. That upon presentation of new judgment to the Court and the Court's signing of same said new judgment shall be entered in the place and stead of that judgment dated November 14, 1961."

Pursuant to this order, a new judgment, verbatim with the original except for the date, was entered on April 19, 1962. It is from this order of April 19, 1962, that the defendants cross-appealed, contending it was beyond the court's authority to enter such an order, in effect extending the time for appeal from the judgment entered November 14, 1961. If this order granting the plaintiffs' motion of February 23, 1962, was properly granted, the time for appeal from the judgment commenced to run on April 19, 1962, and plaintiffs' notice of appeal from the judgment and order denying their supplemental motion of March 5, 1962, filed March 22, 1962, was timely; conversely, if the court erred in granting plaintiff's motion, the time for appeal from the judgment would have commenced to run from November 14, 1961, and the appeal would have been late and this court without jurisdiction to entertain the appeal from the judgment. See: I.C. § 13–201; Martin v. Soden, 80 Idaho 416, 332 P.2d 482; Mills v. Board of County Comrs., 35 Idaho 47, 204 P. 876; Estate of Dunn, 45 Idaho 23, 260 P. 432.

From the affidavits in support of the plaintiffs' motions and from the testimony submitted at the hearing, it appears that between November 1, 1961 and January 1, 1962, counsel for plaintiffs were involved in changing location of their offices and in remodeling their new offices; that their regular office procedures were disrupted, and they were employing temporary clerical employees; that mail was handled by individuals unfamiliar with their office procedure and their files were disorganized during that period; that it was not until

February 23, 1962, that counsel became aware that findings of fact, conclusions of law and judgment had been entered on November 14, 1961; that the plaintiffs themselves had repeatedly inquired of counsel as to when the final judgment of the trial court would be entered, but that counsel could not tell them, because they were not aware of entry of the judgment.

Plaintiffs contend, that in our opinion rightfully so, that IRCP 60(b) did not wholly abrogate I.C. § 5–905, at least insofar as the following quoted portion thereof is concerned:

"* * * Whenever any judgment, order or proceeding is taken against a party otherwise without default, through the neglect or failure of any attorney of such party to file or serve any paper within the time limited therefor, the court, or the judge thereof, in vacation, *shall*, upon application filed within the time above limited, [not exceeding six months after the adjournment of the term] set aside such judgment, order or proceeding * * *." (Emphasis added).

No findings of fact were entered following the hearing on the plaintiffs' motions, yet it is implicit in the order entered that the trial court found that the plaintiffs were "otherwise without fault", and that the judgment was entered against them "through the neglect or failure" of their attorneys, to discover that the findings of fact, conclusions of law and decree had previously been entered by the trial court. Under the decisions of this court, when similar findings have been made, the above quoted portion of I.C. § 5–905 (a 1921 amendment of the previous statute), has been held to make it the duty of the court to set aside a default entered against a defendant for the failure of his attorney to appear and answer within the time provided therefor. State ex rel. Sweeley v. Braun, 62 Idaho 258, 110 P.2d 835; Miller v. Brinkman, 48 Idaho 232, 281 P. 372. The reasoning of such decisions is applicable to the situation here; we are of the view that the trial court did not err in setting aside the original judgment and entering a subsequent judgment, when failure to move earlier to set it aside was occasioned by the fault or neglect of the plaintiff's counsel. This conclusion is reached even though the effect of such determination by a trial court is to extend the time for appeal. Defendant's cross-appeal is not well taken.

## PLAINTIFFS' APPEAL

Plaintiffs appealed from the denial of their supplemental motion of March 5, 1962, for a new trial or to set aside the judgment and enter new findings of fact and conclusions of law and entry of a new judgment. The grounds set out in the supplemental motion are commensurate with

the basis for plaintiffs' appeal from the judgment, and will be dealt with in the following portion of the opinion.

In 1953, the defendants, Harold Irick and Norma Irick, and other parties not now involved, as purchasers, entered into a written contract for the purchase of certain real property in Bannock County, together with a timber claim in Caribou County. They continued in possession of this real property, receiving an assignment of the interest of their co-purchasers.

Defendants under date of February 28, 1959, entered into a written contract with plaintiffs, by the terms of which the plaintiffs agreed to purchase the real property therein described and timber claim, with certain grazing rights. The price agreed upon was $100,000, of which $30,000 was paid in cash; the plaintiffs also agreed to assume and pay $15,476.00, being the balance on a real estate mortgage, and to assume and pay $24,975.00 the balance owing by the defendants to their original sellers, and to pay the remaining balance of $29,-553.15, to defendants in ten annual installments of principal and interest. The funds were all to be paid to an escrow holder and disbursed by it in accordance with written instructions. Under this contract plaintiffs went into possession of the premises.

In January, 1961, the plaintiffs instituted this action seeking relief under two causes of action, the first for misrepresentation, asking for rescission of the contract of February 28, 1959, and for damages, the second cause based on the same allegations of misrepresentation set forth in the first cause, seeking an alternative recovery of damages in the amount of $38,000.00. The defendants answered, denying all of plaintiffs' allegations of misrepresentation. The cause was tried to the court without a jury, and thereafter findings of fact, conclusions of law and decree were entered in favor of the defendants.

The trial court found that the parties had entered into the written contract on February 28, 1959, for the sale and purchase of the real property involved, and that plaintiffs, as purchasers, in compliance with the agreement, took possession of the premises. The court found the parties had executed the escrow agreement mentioned. The court also made the following findings pertinent herein:

V.

"The Court finds that, although the defendant, Harold Irick, recklessly represented to plaintiffs that the forest land to be purchased under said contract could be traded with the United States Forest Service for other forest land adjoining a portion of the property purchased under the aforementioned written contract, the Court nonetheless finds that such statement was not a material misrepresentation that the

plaintiffs relied upon or which induced them to enter into said written contract with the defendants.

## VI.

"The Court further finds without determining or attempting to reconcile all of the conflicting portions of the respective parties' testimony regarding the waters of East Bob Smith Creek, the uncontradicted statements of the defendant, Harold Irick, to the effect that defendants always had plenty of water were false and misleading and that these representations were made recklessly and as a positive assertion, the defendant well knowing that the water master had in fact cut the stream in prior years.

## VII.

"The Court finds, however, that said representations (i. e., the representation that defendant had always had plenty of water and the representation, if made, that defendants owned and were selling all the waters of East Bob Smith Creek) were not made with the intent that plaintiffs should absolutely rely thereon since without dispute, defendant, Harold Irick, advised plaintiffs that he was unaware of the amount of water available, that the water was decreed water, and that the plaintiffs should check the decree at the courthouse in Pocatello and/or with other persons. The Court further finds that the defendants never attempted to conceal any fact or prevent plaintiffs from making any search or inquiry they saw fit, and that the same is so admitted by the plaintiffs. In this regard, without dispute, plaintiffs, at the insistence of defendants and others proceeded with their own investigation of the water rights of the premises. As a consequence thereof, the Court finds that the plaintiffs in entering into said contract with the defendants did not rely upon any misrepresentations of the defendants; nor were they induced to enter into said written contract as a consequence thereof, but were induced to and relied upon the advice of others and upon the results of their own independent investigations in entering into said contract with defendants."

The court also found that the plaintiffs suffered no damages, as the value of the property at the time of the sale agreement was worth more than the purchase price.

Appellants take exception to the findings of the trial court, and particularly assign that it was error "to hold that unproductive inquiries prompted by buyer's actual and seller's pretended ignorance as to some facts (decreed amount) constituted an 'independent investigation' and 'abandonment' of re-

liance upon and totally excused all seller's other knowing or reckless deceptions."

The contract of sale between the plaintiffs and defendants used language identical to that contained in the original contract between the defendants and the original sellers; after describing the premises to be sold, the agreement described the water rights as follows:

"Together with all water and water rights, decreed or undecreed, and appurtenant to, and used in connection with said lands, together with all ditches, dikes, flumes, and other means of conveying said water to a beneficial use thereon."

Plaintiffs contend, that, in conversations preliminary to entering into the contract of February 28, 1958, Mr. Irick assured plaintiffs that the Iricks "always had plenty of water" that "Seller owns the entire creek", that they could "use water any time * * * before and after irrigation season."

Mr. Irick, on cross examination under IRCP 43(b) stated: "I told them that I always had plenty of water to irrigate the place, and as far back in history as I could ever find there had been plenty of water. I showed them my crops; we went over all and looked them all over." In reply to a question as to how much water went with the place, Mr. Irick stated:

"A. I told him I didn't know; that he would have to look at the decrees.

"Q. Did you tell him where the decrees were located, Mr. Irick?

"A. Yes, sir.

"Q. Where?

"A. Pocatello.

"Q. Did you tell him to go look at the decrees, or did you just tell him to go check at the court house?

"A. I told him to check the decrees."

The record indicates that Mr. Knight, who was the real estate broker engaged by Mr. Irick, had known John Andrus, Sr., for thirty years, and that Mr. Knight was the agent who sold property of the Andruses' in Utah. The Andruses had Mr. Knight go to Pocatello Courthouse to check the water rights on the land. He reported to the Andruses that there were seven and a half feet of decreed water. Later John Andrus, Sr., was advised by others to further check the water. He admitted that Mr. Irick had also advised him to check the water right. The plaintiffs checked the water with a Mr. Onstott of the Conservation Service at Pocatello, and were advised that the final word was the State Reclamation Department at Boise. The plaintiffs wrote the State Reclamation Department, and received a reply enclosing an excerpt of the decree of the waters of East Bob Smith Creek, which set forth the date of priority and amounts of the decreed rights.

Almost five months elapsed between the time that the parties first met in October 1958, and the date the contract of sale was finally executed on February 28, 1959. During this period the plaintiffs made several trips from their home in Utah to the property in question and went over the property. The evidence discloses that the plaintiffs had spent their lives on farms and that John Andrus, Jr., had had considerable experience with irrigation. He testified on cross-examination:

"Q. And you carefully looked the place over, the whole thing?

"A. Well, I suppose we did to the best of our ability.

"Q. Mr. Irick cooperated and showed you anything you wanted to know, didn't he?

"A. Yes, sir.

"Q. He was very friendly with you?

"A. Yes, Sir. He was.

"Q. Did he try to conceal anything from you?

"A. No, Sir. I don't think he did."

Later in his testimony, John Andrus, Jr., again reiterated:

"Q. He (Irick) never tried to conceal anything from you, did he?

"A. No, Sir. He didn't."

Plaintiffs contend that Irick knew that his water right had been cut in previous years during the irrigation season, yet failed to advise them of this fact, and that Irick referred them to sources of information concerning the water, which would not reveal the fact that in years gone by the water right had been cut.

Accepting the validity of the trial court's finding that Irick's statements to the effect he always had plenty of water was false and misleading, and were made recklessly, there is a direct finding by the trial court that these representations were not made with the intent that plaintiffs should absolutely rely upon them; the trial court also found that there was no attempt by the defendant to conceal any fact, or prevent the plaintiffs from conducting their own inquiry, and that the plaintiffs did not rely upon such representations, nor were they induced to enter into the written agreement by reason thereof, but that they relied upon their own independent investigation. These ultimate facts as found by the trial court, were gleaned from a record that is sufficient to sustain such findings, when considered in the light most favorable to the defendants. Huggins v. Green Top Dairy Farms, 75 Idaho 436, 273 P.2d 399; Jensen v. Chandler, 77 Idaho 303, 291 P.2d 1116.

In Loosli v. Heseman, 66 Idaho 469, 473, 162 P.2d 393, this court in discussing assignments of error attacking the sufficiency of the evidence to support the findings of a

trial court, quoted from Checketts v. Thompson, 65 Idaho 715, 152 P.2d 585, as follows:

" 'This Court has repeatedly held that where conflicting evidence is submitted to a trial court sitting without a jury, either as a court of law or as a court of equity, the findings of the court on questions of fact will not be disturbed, where there is competent evidence to support them.' See, also, Nelson v. Altizer, 65 Idaho 428, 144 P.2d 1009. And, again, in the case of Wieri v. Anaconda [Copper] Mining Co., [116] Mont. [524], 156 P.2d 838, 841, it is said:

" 'On the review of a decision of the District Court the presumption is that the decree of that court is correct (citing authorities), and that its judgment will not be set aside unless there is a clear preponderance of the evidence against it.' "

See also: Belts v. State, 86 Idaho 544, 388 P.2d 982; Knoblock v. Arenguena, 85 Idaho 503, 380 P.2d 898; Angleton v. Angleton, 84 Idaho 184, 370 P.2d 788.

█ In dealing with actions of this nature, over the years certain requirements of proof have been recognized by this court as essential in order that a plaintiff may recover. One of the more recent pronouncements of this court concerning such requirements is found in Walker v. Nunnenkamp, 84 Idaho 485, 489, 373 P.2d 559, as follows:

"To establish the allegation of fraud, a party must prove by a preponderance of the evidence all of the elements which are inherently contained in such allegation.

" ' * * * Comprehensively stated, the elements of actionable fraud consist of: (1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity or ignorance of its truth. (5) His intent that it should be acted on by the person and in the manner reasonably contemplated. (6) The hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon. (9) And his consequent and proximate injury. * * * ' 37 C.J.S. Fraud § 3, pp. 215–216."

See also 23 Am.Jur., Fraud and Deceit, Sec. 20, p. 773.

"The elements of fraud set forth in the above C.J.S. quotation were substantially approved and followed by this Court in Weitzel v. Jukich, 73 Idaho 301, 251 P.2d 542, wherein this Court said:

" 'Elements of fraud generally consist of a representation or statement of a past or existing fact which is material, which is untrue; the speaker's

knowledge of its falsity or ignorance of its truth; his intention that it should be acted on by the person to whom it is made; ignorance of its falsity on the part of the person to whom it is made and reliance on the representation; his right to rely upon it; his damage occasioned thereby. * * * ' "

"A party alleging fraud has the burden of proof. All elements of such allegation must be established by clear and convincing evidence. Barron v. Koenig, 80 Idaho 28, 324 P.2d 388; Scogings v. Love, 79 Idaho 179, 312 P.2d 570; Cooper v. Wesco Builders, 76 Idaho 278, 281 P.2d 669."

■ From our examination of the record we conclude that the trial court's finding of fact: " * * * that the plaintiffs in entering into said contract with the defendants did not rely upon any misrepresentations of the defendants; nor were they induced to enter into said written contract as a consequence thereof, but were induced to and relied upon the advice of others and upon the results of their own independent investigations in entering into said contract with defendants," is amply sustained by the evidence.

■■ Plaintiffs further assign as error that: "The Court erred in adopting a parcel by parcel damage formula (based in part upon no evidence whatever and partly on stricken testimony) instead of starting with the parties agreed gross price and computing the deficiency." That assignment is primarily directed to a discussion by the trial court in its memorandum opinion concerning valuations of property. The trial court specifically found that the plaintiffs suffered no damage, in that the value of the property as of the date of the contract exceeded the contract price. That finding is supported by the testimony of defendant Irick to the effect that the farm was well worth $100,000, and by an offer of proof by defendant, which was unobjected to by the plaintiffs, that a licensed realtor would have testified the reasonable value in March, 1959, was $120,000. In Jorgenson v. Stirling, 35 Idaho 785, 791, 209 P. 271, it is stated: "The principal purpose of appellate courts is to review the conclusions of law of the trial court, and correct such as are deemed to be erroneous, and where the final judgment of the trial court is correct, when entered upon an erroneous theory of law, the judgment will be affirmed by the appellate court upon what it conceives to be the correct theory of the law." In Whittaker v. Kauer, 78 Idaho 94, 98, 298 P.2d 745, this court ruled that it may regard the trial court's memorandum opinion for the purpose of better understanding the findings of fact. See also: Geist v. Moore, 58 Idaho 149, 70 P.2d 403; Terry v. Terry, 70 Idaho 161, 213 P.2d 906. This assignment of er-

ror is not well taken, for the findings of fact and conclusions of law constitute the final decision of the court, and we are concerned with their correctness and the judgment, rather than the reasons expressed in the opinion which motivated the trial court in reaching its conclusion. Buckhantz v. R. G. Hamilton & Co., 71 Cal.App.2d 777, 163 P.2d 756 (1945).

During the course of the trial, plaintiffs elicited certain testimony indicating a deficiency in the number of irrigated and sub-irrigated acres, claimed to have been represented to them by the defendants as included in the property purchased. Defendants moved to strike this testimony as not within the issues, which motion was granted. Plaintiffs then sought to amend their complaint to conform to the evidence that was offered. The trial court denied plaintiffs' motion to amend for the reasons, as expressed by the court, that at the time of the hearing of a motion to dismiss, prior to trial, the court allowed amendment of the complaint to set forth specifically the misrepresentations to be relied upon by plaintiffs on trial. This ruling has been assigned as error.

The amended complaint makes no mention of any representation or acreages of any particular class deficiencies therein. The record further indicates that a pre-trial conference was held. IRCP 15(a) provides, that a party may amend his pleadings once as a matter of course, but thereafter, only by leave of court or consent of the parties, and that the leave of the court should be freely granted. Under IRCP 15 (b), amendments during the course of trial are allowed "When issues not raised by the pleading are tried by express or implied consent * * *". However, if issues are not tried by such consent, and "If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended * * *". In view of the fact that the trial court had previously authorized an amendment of the original complaint in order that plaintiffs could specifically allege the misrepresentations they were relying upon, and in view of the fact a pre-trial conference was had, which contemplates settling of any amendments of the pleadings IRCP(16), the trial court did not abuse its discretion in denying plaintiffs' motion to amend.

Error is assigned to the trial court's holding that representation as to an arranged trade for grazing ground was immaterial. This assignment is directed to Finding of Fact V herein before set out. Plaintiff Andrus, Jr., testified:

"Q. * * * with respect to this 160 acres of Pebble Creek. That's in Caribou County? A. Yes. It is.

"Q. And he [Irick] said that the Forest Service was anxious to trade.

A. Yes. He said it was timbered land and they would like to trade it, and this other land they would like to trade because it's right in the middle of the forest.

"Q. That they would like to trade it for a section of forest ground next to you, is that it? A. Yes, sir.

\*    \*    \*    \*    \*    \*

"Q. Do you remember whether he said anything about arrangements being made for the trade of any those properties? A. Well, just that he said that they wanted to do it; it was their deal.

"Q. What do you mean by their deal?

A. Well, they had suggested it they were desirous of doing it.

"Q. They, the Forest Service? A. Yes, sir. The Forest Service. And he would advise that it be done."

Neither the earnest money receipt, nor the subsequent contract between the parties made any reference to any agreement for a trade, but only listed the forest land purchased by the plaintiffs. From the record, there appears competent, substantial evidence to sustain the trial court's finding in this regard.

The plaintiffs assert that the trial court erred in failing to make findings or rulings upon the contract cause of action. By their amended complaint, the plaintiffs set out two separate causes of action. The first cause of action set out plaintiffs' alleged grounds of misrepresentation, seeking rescission, and also alleged that they were damaged. In their second cause of action plaintiffs reaffirmed and readopted all allegations of the first cause of action, and further alleged " * * *, a partial failure and want of consideration by reason of the defendants selling and having to sell less than was represented to the plaintiffs, all to the plaintiffs' damages." The trial court made explicit findings of fact on the issues of misrepresentation and lack of damages, which findings of fact were applicable to both causes of action. In the conclusions of law the trial court held that the plaintiffs were not entitled to judgment for damages (the contract cause of action) or for a rescission on the first cause of action. Where the factual issues presented by the complaint are commensurate for both causes of action, it would be useless to require the trial court to reiterate the facts a second time.

Judgment affirmed.

Costs to defendants.

KNUDSON, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.