526 P.2d 1110

Dean POLLARD et al., Plaintiffs-Respondents,

v.

LAND WEST, INC., a corporation, et al., Defendants-Appellants.

No. 11357.

Supreme Court of Idaho.

Sept. 27, 1974.

---

Reed J. Bowen, Idaho Falls, for defendants-appellants.

Gordon S. Thatcher, G. Rich Andrus, Rexburg, for plaintiffs-respondents.

McFADDEN, Justice.

Dean Pollard, Terry Pollard and Tyrone Pollard, as co-partners doing business as Pollard Oil Company (hereinafter referred to as respondent), instituted this action against Land West, Inc., a corporation, Reed J. Bowen, Grant R. Bowen, Bob Ray Duncombe, and Delores J. Duncombe, defendants.[1]   Respondent alleged in its

---

1. Judgment was entered against all the named defendants. However, only Land West, Inc., a corporation, Reed J. Bowen and Grant R. Bowen appeal from that judgment. Herein, when the term appellants is employed, it has reference to these appealing defendants. When the term defendants is employed, it has reference to all named defendants.

complaint that it owned certain real estate upon which was constructed a service station business; that defendants Land West, Inc., and the two Bowens constructed a campground facility upon land owned by Land West, Inc., and that they constructed on this land an inadequate waste sewage disposal system which resulted in contamination of water wells in the vicinity including that of the respondent; that Land West, Inc., and the Bowens sold their property to the Duncombes and that the Duncombes later rescinded the contract of sale. The respondent alleged that the negligent construction, maintenance and operation of the sewage system by all the defendants was a nuisance and contaminated their well and plumbing and water pipes all to their damage in the amount of $1,225, cost of a new well, and for $5,000 general damages, plus $5,000 punitive damages.

The defendants, Bob Ray Duncombe and Delores J. Duncombe, answered separately from the other defendants, generally denying the allegations of the complaint, alleging that they operated the campground only for the period of May 15, 1969, to July 15, 1969. The remaining defendants (the appellants herein), Land West, Inc., and the two Bowens, generally denied the allegations of the complaint.

The trial court heard the case sitting without a jury and entered findings of fact and conclusions of law in favor of the respondent, finding the damages to be $1,225 as costs of the respondent for the new well, and $1,000 general damages. Judgment was entered for the damages plus costs.

The appellants perfected an appeal from the judgment, and by the appeal present as the principal issue the sufficiency of the evidence to support the findings of fact by the trial court of a causal relationship between the respondent's polluted well and the waste disposal system on the defendants' property. We affirm for the reasons set out herein.

In 1968 respondent began construction of a gasoline service station adjacent to U.S. Highway 191 at Last Chance, Fremont County. The station is located in a recreational region locally referred to as Island Park. During that year, the respondent substantially completed construction of the facilities and had a domestic water well (hereinafter well no. 1) drilled on its property. This well was designed to furnish domestic water for the service station and for a trailer house located next to the station. Respondent also built a septic tank sewer system for disposal of the wastes of the station and trailer house. Respondent completed construction during the spring of 1969 and opened the service station to the public for business on June 23, 1969.

The appellants' property is located to the east of the service station directly across U.S. Highway 191. The property was developed into a commercial campground to serve the traveling public and was operated under the franchise of Kampground of America (KOA). The appellants bought the property and in 1967 constructed the campground facilities, including the sewage disposal system. The system consisted of the collecting system of pipes leading to a 1,000 gallon septic tank which discharged into a seepage pit. The system served the campground's toilet, shower and laundry facilities; also, travel trailers discharged their waste storage tanks into the system. This system was inadequate for the designed purposes and in 1969 raw sewage overflowed from the seepage pit. On or about February 7, 1969, the appellants sold the campground to Bob Ray Duncombe and Delores J. Duncombe. The Duncombes operated the campground until August, 1969, when they rescinded the contract of purchase and relinquished possession.

Several days subsequent to the station's opening on June 23, 1969, the respondent's well water was foul smelling and dirty in color. Several witnesses testified that from its odor and discoloration the water appeared to be contaminated with raw sewage and that the water was unusable. Respondent then had a second well (hereinafter well no. 2) drilled to a depth of 63

feet and cased to a depth of 58 feet in an attempt to locate potable water. The well driller never charged respondent for this well, as it too produced nonpotable water. In the fall of 1969, respondent had the well driller put down a third well (hereinafter well no. 3). This well went to a depth of 115 feet and was cased to a depth of 90 feet. Tests in 1970 on the water drawn from well no. 3 indicated that the water was potable. Respondent paid the driller $1,225 for this third well.

The appellants submit that there is insufficient evidence to establish causation between their waste disposal system and the pollution of the respondent's water supply. It is clear from the record that the water drawn from wells no. 1 and no. 2 was not potable. Regarding causation, the trial court found that "the contamination of the Plaintiff's well occurred from sewage coming from the sewage system on Defendants' property" and that the evidence was insufficient to establish that other sources of pollution, not the appellants' sewage system, were the cause of the polluted water.

In essence, the trial court's findings raise two issues: (a) whether in fact sewage was the polluting agent; and (b) whether the appellants' waste disposal system was the cause in fact and at law of the pollution.

■ The appellants argue that the foul smell of the water may have been caused by methane or hydrogen sulfide gas, inferring therefrom that the water was not polluted by their sewage. At trial, the appellants introduced some evidence that methane or hydrogen sulfide gas may have been emanating from decaying organic matter in a nearby swampy area. However, three witnesses testified on behalf of the respondent that the polluted water smelled like sewage or urine and that the appearance of the water was discolored. Also, two persons employed by Pollard to operate the service station testified that they continually suffered diarrheic symptoms during the summer of 1969. It is the conclusion of the court that there was sufficient evidence to sustain the trial court's finding that the respondent's domestic water drawn from wells no. 1 and no. 2 was contaminated with sewage.

Appellants also argue that any pollution in the respondent's well came from other waste disposal systems in the immediate area. The record discloses that there were three other systems for the disposal of human wastes located within 300 feet of respondent's wells. Two of these were in the nature of "outdoor privies." These served two cabins which were only occupied intermittently, primarily on the weekends. The third disposal system was associated with a cabin occupied on a full time basis during the summer. The cabin had indoor plumbing connected to a septic tank.

■ It is recognized that respondent did not completely negate the possibility of contamination from these other sources. However, "[w]hen tortious acts of several parties concurrently cause an injury, each tort-feasor is liable for the whole damage at the option of the injured party." Spencer v. Spencer, 91 Idaho 880, 883, 434 P.2d 98, 101 (1967). See Woodman v. Knight, 85 Idaho 453, 380 P.2d 222 (1963).

The appellants contend that the respondent failed to establish a causal relationship between the pollution of respondent's well and appellants' sewage system. In other words appellants contend there is insufficient evidence to establish that the pollution could be traced to appellants' sewage system. The record indicates that the primary geological formation of the immediate area is fractured basalt; expert testimony established the fact that it is scientifically possible that the appellants' wastes flowed through the fractured basalt and contaminated the respondent's water supply. Moreover, the record establishes a coincidence in time between the beginning of the pollution and the beginning of considerable tourist use of appellants' campground and sewage system. The appellants' campground did not receive heavy use until the beginning of the summer tourist season; this increased use coincided

with the occurrence of the pollution in the respondent's station in June. Also, in response to a hypothetical question, and expert witness presented by the respondent testified that the most probable source of the pollution was the appellants' waste disposal system. Thus, the record indicates that there is a significant probability that the discharge from appellants' sewage system was a cause in fact of the respondent's pollution.

Furthermore, the waste disposal system constructed by the appellants was in violation of state standards and a county ordinance. The record indicates that the appellant constructed a septic tank system with a seepage pit from which the wastes were discharged into the ground. However, state standards require that a septic tank system with a drain field be used in areas such as this where the primary geological formation is fractured basalt.[2] Violation of the state standards also constitutes a violation of the Sanitary Code of Fremont County.[3] Expert testimony suggests that the primary reason behind the state standards is that, in fractured basalt formations such as this, the seepage pit would induce sewage directly into the ground water system from which adjoining well users draw their water. Thus, the expert witnesses deduce that the seepage pit would discharge the sewage in such a manner that the discharge would cause the pollution of the respondent's wells.

■ In summary, the geology of the area, the time coincidence between the heavy use of the campground's waste disposal system and the beginning of the pollution, expert testimony, and the design of the waste disposal system constitute substantial and competent although conflicting evidence to support the trial court's finding that discharge from the appellants' waste disposal system was the cause in fact of the respondent's polluted water supply. See Hafer v. Horn, 95 Idaho 621, 515 P.2d 1013 (1973).

Questions of causal relationships may be questions of probabilities. Prosser summarizes the standard by which causal questions are to be analyzed:

"The plaintiff is not, however, required to prove his case beyond a reasonable doubt. He need not negative entirely the possibility that the defendant's conduct was not a cause, and it is enough that he introduces evidence from which reasonable men may conclude that it is more probable that the event was caused by the defendant than that it was not." Prosser, The Law of Torts, p. 242 (4th ed 1971).

■■ Questions of causal relationships are essentially questions for the trier of fact. See, Lundy v. Hazen, 90 Idaho 323, 411 P.2d 768 (1966); Clark v. Chrishop, 72 Idaho 340, 241 P.2d 171 (1952). The causal relationship was established by circumstantial evidence which is an acceptable method of proof. See, Hobbs v. Ada County, 93 Idaho 443, 462 P.2d 742 (1969); Dick v. Reese, 90 Idaho 447, 412 P.2d 815 (1966). The trial court's findings as to the causal relationship will not be disturbed on appeal if those findings are supported by substantial and competent but conflicting evidence. See Hafer v. Horn, supra. As was previously discussed, the respondent established the substantial probability that the appellants' waste disposal system contributed to the pollution of wells no. 1 and no. 2;

2. "V Seepage Pits—
   A. Use of seepage pits with septic tanks will be approved when soil conditions are suitable for installation.
   NOTE: Seepage pits shall not be used in fissured lava rock areas or in localities where shallow wells are used as a source of water supply."
   Bulletin 6, "Standards for Subsurface Disposal Systems," Engineering and Sanitation Division, Idaho Dept. of Health (1964) p. 16.

3. "Section III(A), (1), (b) All subsurface sewage disposal systems shall be installed according to 'Standards for Subsurface Sewage Disposal Systems,' published by the Idaho Department of Health, Engineer and Sanitation Division, Bulletin No. 6." Sanitary Code of Fremont County, adopted May 10, 1965.

therefore, we will not disturb the trial court's finding of causation.

The appellants also submit that the well driller employed by the respondent negligently constructed well no. 2 and that this negligence should bar the plaintiff's recovery. The specific act of negligence complained of is that the well driller negligently cased the well and that, as a result, the polluted ground water close to the surface contaminated the well. However, the respondent was not charged for the costs of drilling well no. 2 by the well driller, nor was the respondent awarded damages for the costs of drilling well no. 2; therefore, this court will not consider any questions regarding contributory negligence of the respondent.[4]

■ The appellant also assigned as error the trial court's award of damages. The court awarded the amount of $1,225 as compensation for the cost of drilling well no. 3, as stipulated to by the parties, and the amount of $1,000 as general damages. The award of $1,000 is essentially an award for discomfort, annoyance, and inconvenience sustained by the respondent. Discomfort, annoyance and inconvenience are appropriate elements of a damage award in this type of case. See, City of New Cordell v. Lowe, 389 P.2d 103 (Okla. 1963); Prosser, supra, at p. 602. An award of $1,000 is not an unreasonable amount to compensate the respondent for discomfort, annoyance and inconvenience. Therefore, we find no error.

4. This court does not have to consider the issue of whether, on these facts, contributory negligence is a defense to a nuisance action.

■ The appellant assigned as error the trial court's failure "to dismiss the plaintiff's complaint at the close of the plaintiff's evidence pursuant to the motion of the defendant." At the close of the trial, the appellant renewed this motion. However, the law is settled that if the defendant presents evidence after submitting the motion to dismiss, then he waives his right to assign error to the denial of that motion solely on the basis of the evidence presented by the plaintiff.

"If the defendant does offer evidence, after his motion to dismiss at the close of the plaintiff's evidence is not granted, he waives his initial motion and the right to appeal any error committed in the disposition of the motion. The significance of this is that on appeal from a final judgment the court will look to all of the evidence and not merely that put in as part of the plaintiff's case." 9 Wright & Miller, Federal Practice and Procedure: Civil § 2371, p. 221 (1971).

See, DeAtley Corp. v. Otto, 95 Idaho 586, 513 P.2d 638 (1973). Therefore, we will not consider that assignment of error.

We have considered the appellants' other assignments of error and deem them to be without merit.

The judgment of the trial court is affirmed. Costs to respondent.

SHEPARD, C. J., and DONALDSON, McQUADE and BAKES, JJ., concur.

*See* Prosser, Law of Torts, pp. 608–610 (4th ed. 1971).