712 P.2d 708

**Willard HIBBLER and Darlene Hibbler, husband and wife, Plaintiffs-Appellants,**

v.

**John E. FISHER and Audree Fisher, husband and wife, Defendants-Respondents.**

No. 15591.

Court of Appeals of Idaho.

Dec. 23, 1985.

Roger D. Ling, of Ling, Nielsen & Robinson, Rupert, for plaintiffs-appellants.

William A. Parsons, of Parsons, Smith, Stone & Fletcher, Burley, for defendants-respondents.

SWANSTROM, Judge.

Plaintiffs, Willard and Darlene Hibbler, appeal from an amended judgment which was entered against them after the trial court set aside an earlier judgment entered in their favor. This suit arose after the Hibblers had purchased a trailer park from John and Audree Fisher and subsequently had encountered problems with the water system in the "new section" of the park. The Hibblers sued the Fishers alleging misrepresentation, breach of implied warranty, and negligence in the installation of the water system. A jury verdict favoring the Hibblers was nullified when the district judge granted the Fishers' motion under I.R.C.P. 50(b) for a judgment n.o.v. The Hibblers present six issues on appeal, revolving around whether the district court erred by viewing only the evidence presented by the Hibblers when granting the judgment n.o.v. We conclude that the restrictive view taken by the district judge was error, nevertheless, we affirm the judgment n.o.v.

We first address the question of the evidence to be considered by the district judge when ruling on a motion for judgment n.o.v. In their case-in-chief the Hibblers presented evidence of specific malfunctions of the water system, and evidence tending to show that the entire system had been improperly installed. They also presented a "rough" estimate from a licensed plumber that it would cost $128,500 to replace the water system in the new part of the park.

At the close of the Hibblers' evidence, the Fishers moved for a directed verdict, which was granted on the misrepresentation count and denied on the other two counts. The Fishers then presented their defense. This included expert testimony that if the water system needed to be replaced it would cost $12,000 to $15,000. After the Fishers put on their evidence and when both parties had rested the Fishers renewed their motion for a directed verdict. The motion was denied and the case was submitted to six jurors who returned a verdict of $15,000 in favor of the Hibblers. The Fishers moved for a judgment n.o.v. which was granted on the ground that the Hibblers had failed to prove their damages.

Although the trial judge may have been inclined to grant the motion for directed verdict as to all counts at the close of plaintiff's case, he refrained from directing a verdict and allowed the case to proceed and to be considered by the jury. Only then did the judge step in to grant the Fishers' motion for judgment n.o.v. His action was based upon the "preferred practice" outlined in 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2533 at 585–86 (1971), and quoted by the Idaho Supreme Court in *Gmeiner v. Yacte*, 100 Idaho 1, 9 n.5, 592 P.2d 57, 65 n. 5 (1979). Utilizing this preferred practice, a trial judge, in effect, defers ruling on a motion for a directed verdict until the end of all the evidence or until the jury returns its verdict. Here, however, in ruling on the subsequent motion for judgment n.o.v. the judge considered only the evidence put on by the plaintiffs, Hibblers, during their case-in-chief. The Hibblers argue that it was error for the judge not to consider *all* of the evidence, including testimony of the Fishers' expert, in ruling on the motion for judgment n.o.v. We agree.

A jury verdict will not be overturned if it is supported by substantial and competent evidence. *Larson v. Uriona*, 107 Idaho 925, 693 P.2d 1127 (Ct.App.1985). Evidence is substantial if "it is of such sufficient quantity and probative value that reasonable minds *could* conclude that the

verdict of the jury was proper." *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 736, 518 P.2d 1194, 1198 (1974). The same standard applies to a motion for a directed verdict. If there is substantial evidence to justify submitting the case to the jury, the motion should be denied. *Barlow v. International Harvester Company*, 95 Idaho 881, 522 P.2d 1102 (1974).

A motion for judgment notwithstanding the verdict has been described as a "delayed motion for directed verdict" and can be used by a district court to correct its error in denying the directed verdict. *Mann v. Safeway*, 95 Idaho at 736, 518 P.2d at 1198. In *Mann*, as here, a directed verdict motion was denied at the end of plaintiff's case, and renewed at the close of all the evidence by reference to the earlier motion. The renewed motion was denied, but later a judgment n.o.v. was granted. This was reversed by the Supreme Court. In applying the substantial evidence test, the Supreme Court reviewed the evidence presented by *both* parties.

9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2533 at 585–86 (1971) makes it clear that when ruling on a motion for judgment n.o.v. the district court looks at *all* of the evidence which was before the jury. Speaking of the situation where the trial judge—although doubtful of the sufficiency of the evidence—nevertheless follows the preferred practice of refraining from directing a verdict, the treatise says:

> If the jury agrees with the court's appraisal of the evidence, and returns a verdict for the party who moved for a directed verdict, the case is at an end. If the jury brings in a different verdict, the trial court can grant judgment notwithstanding the verdict. Then if the appellate court holds that the trial court was in error in its appraisal of *the evidence*, it can reverse and order judgment on the verdict of the jury, without any need for a new trial. [Emphasis added.]

Of course, "the evidence" mentioned here is the same evidence viewed by the trial court. It is equally clear that "the evi-

dence" refers to *all* of the evidence because the appellate court could not "reverse and order judgment on the verdict of the jury, without any need for a new trial" unless it had reviewed the evidence considered by the jury—defendant's as well as plaintiff's evidence—to determine whether the verdict should stand.

An analogous situation exists when a defendant's motion for involuntary dismissal under I.R.C.P. 41(b) is denied at the close of plaintiff's case in a trial without a jury.

> If the motion is denied, the defendant may go ahead and offer evidence.
>
> If the defendant does offer evidence after his motion to dismiss at the close of the plaintiff's evidence is not granted, he waives his initial motion and the right to appeal any error committed in the disposition of the motion. The significance of this is that on appeal from a final judgment the court will look to all of the evidence and not merely that put in as part of the plaintiff's case.

[9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2371 at 221 (1971)] (quoted in *Pollard v. Land West, Inc.*, 96 Idaho 274, 279, 526 P.2d 1110, 1115 (1974)).

> Denial of a motion for involuntary dismissal is not appealable. The denial is reviewable on a final judgment though if the motion was on the ground of insufficiency of the evidence the courts say that on appeal they will consider all the evidence rather than only what was before the court when the motion to dismiss was made.

C. WRIGHT & A. MILLER, *supra* § 2376 at 247.

*Miller Co. v. Stresstek*, 108 Idaho 187, 191, 697 P.2d 1201, 1205 (Ct.App.1985). *See also Smith v. Great Basin Grain Co.*, 98 Idaho 266, 561 P.2d 1299 (1977) (directed verdict at end of plaintiff's case-in-chief denied based upon plaintiff's evidence, and directed verdict and a motion for judgment n.o.v. denied based on conflicting evidence at close of trial).

Accordingly, we hold that it was error to grant the judgment n.o.v. based solely on the evidence presented by the plaintiffs. Further, we believe that when all the evidence is considered, reasonable minds could conclude that the entire water system was defective at the time of the sale; that there was substantial evidence as to the cost of replacement, which justified submitting the case to the jury.

The Fishers, although contending that the district court was correct in its damages determination and in its restricted view of the evidence, direct our attention to the rule stating that where a district court makes the correct ruling on an erroneous theory, the appellate court can affirm on the correct theory. *Newbold v. Arvidson*, 105 Idaho 663, 672 P.2d 231 (1983); *City of Weippe v. Yarno*, 96 Idaho 319, 528 P.2d 201 (1974). Rather than cross-appeal, the Fishers present three alternative theories for us to affirm the district judge. We will address two of these, first that the Hibblers' action was time barred by the statute of limitations, and second, that the doctrine of implied warranty of fitness of purpose is inapplicable to this case.

Before discussing the alternative theories, we wish to address a related point made by the Hibblers. In their reply brief the Hibblers propose that if we consider the alternative grounds, then we should also, in fairness, consider whether the court erred in directing a verdict on the fraud count against them. Although this issue was not appealed, we will discuss it briefly.

The trial judge, noting that the elements of fraud must be proven by clear and convincing evidence, ruled that the Hibblers failed to adequately prove their damages. The Hibblers argue that the higher standard of proof applies only to the *fact* of damages, and that the *amount* of damages is governed by the lower preponderance of the evidence standard. *See generally* 37 AM.JUR.2d *Fraud and Deceit* § 468 (1968). We tend to agree. However, the directed verdict can be upheld under either standard of proof, so we need not reach the issue. This is because the Hibblers failed in proving the damages available in a fraud action.

In *Shrives v. Talbot*, 91 Idaho 338, 345, 421 P.2d 133, 140 (1966), it was stated that our Supreme Court:

> has long been committed to the rule that in order to show damage from fraud the purchaser of property must show that the property he obtained was of less value than the price paid for it. *Smith v. Neeley*, 39 Idaho 812, 818; 231 P. 105, 106 [1924]. This principle was reiterated as late as 1964, in *Andrus v. Irick*, 87 Idaho 471, 394 P.2d 304 [1964]. Thus where the purchaser seeks damages for alleged fraud it appears Idaho is committed to the "out-of-pocket" rule which limits the recovery of damages to the difference between the real value of the property purchased and the price paid or contracted for. This court has often recognized the existence of a different measure of damages referred to as the "benefit-of-bargain" rule, under which the damages allowed are the difference between the real value of the property purchased and the value which it would have had had the representations been true.

*See also Nelson v. Armstrong*, 99 Idaho 422, 427 n. 1, 582 P.2d 1100, 1105 n. 1 (1978).

The Hibblers presented evidence of the replacement cost of the water system. Idaho case law does not support replacement cost as an appropriate remedy for fraud. The only evidence presented relevant to damages for fraud was the contract price. No evidence was presented of either the "real" value of the trailer park, or of the value it would have had if the representations had been true. Consequently, the evidence presented no basis to calculate damages for fraud. Thus, the fraud count failed for inadequate proof of damages, whether considered by the clear and convincing or preponderance standard. Accordingly, we will not disturb the directed verdict. I.R.C.P. 61.

We now turn to the respondent Fishers' contention that even if the trial

judge erroneously failed to consider all of the evidence in ruling on the motion for judgment n.o.v. we should affirm the judgment on other grounds. The Fishers' first contention is that the Hibblers' causes of action were time barred by statutes of limitation. The Fishers in their answer pled the limitation bar contained in I.C. § 5–218(4), or alternatively in I.C. § 5–224. Only I.C. § 5–224 remains in issue since § 5–218(4) deals with the fraud claim which was disposed of by an unappealed directed verdict. For reasons to follow we deal here only with the negligence count in our discussion of statutes of limitation. Under I.C. § 5–224, "[a]n action for relief not hereinbefore provided for must be commenced within four (4) years after the cause of action shall have accrued." This section applies to an action for damages to fixtures or to real property. *Galbraith v. Vangas*, 103 Idaho 912, 655 P.2d 119 (Ct. App.1982). Since the complaint alleges negligence, I.C. § 5–216 and 5–217 concerning contracts do not apply; and, since an improvement to real property is involved, I.C. § 5–218(3) covering injuries to chattels does not apply. Also, I.C. § 5–219(4) does not apply since neither Mr. Fisher, nor the contractor hired to install the water system, were licensed plumbers. *See Owyhee County v. Rife*, 100 Idaho 91, 593 P.2d 995 (1979).

■ The water system was completed in 1973, nearly ten years before the Hibblers filed suit. Therefore, unless tolled the action is barred by I.C. § 5–224. However, this action arises out of the design and construction of improvements to real property. Therefore, the accrual provisions of I.C. § 5–241 apply. Subsection (a) of § 5–241 provides that, unless previously accrued, tort actions "shall accrue and the applicable limitation statute shall begin to run six (6) years after the final completion of construction of such an improvement." This section provides a limited discovery rule for tort claims arising out of the design or construction of improvements to real property. *Twin Falls Clinic & Hospital Bldg. v. Hamill*, 103 Idaho 19, 644 P.2d 341 (1982). This tolling can apply only to latent defects, as patent defects are deemed discovered. *Id.*

■ The water system involved here was plagued by latent defects. Assuming, as the evidence permitted, that the Hibblers reasonably did not discover the latent defects before the end of the six-year accrual period allowed by I.C. § 5–241, they had four more years under § 5–224 in which to file the negligence action. Testimony indicates that the water system was installed in 1973, sometime during the warm weather months. The action was commenced on January 19, 1983, within the ten-year period. Therefore, we cannot say that the negligence count was barred by the applicable statute of limitation. This disposes of the Fishers' first alternative ground for upholding the district court.

■ The Fishers also invite us to affirm the district court on the ground that an implied warranty of fitness is not applicable in this case. We agree for reasons explained below and we affirm the judgment n.o.v. as to the warranty count.

The Idaho Supreme Court has ruled that an implied warranty of fitness is invoked in the sale by a builder-vendor of a new house. *Bethlahmy v. Bechtel*, 91 Idaho 55, 415 P.2d 698 (1966). After canvasing decisions from other jurisdictions the court said they

show the trend of judicial opinion is to invoke the doctrine of implied warranty of fitness in cases involving sales of new houses by the builder. The old rule of caveat emptor does not satisfy the demands of justice in such cases. The purchase of a home is not an everyday transaction for the average family, and in many instances is the most important transaction of a lifetime. To apply the rule of caveat emptor to an inexperienced buyer, and in favor of a builder who is daily engaged in the business of building and selling houses, is manifestly a denial of justice.

*Bethlahmy v. Bechtel*, 91 Idaho at 67, 415 P.2d at 710. We need not decide if the implied warranty extends to sales of in-

come-producing property to buyers who do not purchase solely to obtain a residence.[1] The Fishers do not fit within the term builder-vendor.

The Washington Supreme Court has stated that the "essence of the implied warranty of suitability or habitability requires that the vendor-builder be a person regularly engaged in building, so that the sale is commercial rather than casual or personal in nature." *Klos v. Gockel,* 87 Wash.2d 567, 554 P.2d 1349, 1352 (1976). In *Klos* the builder-vendor acted as the general contractor in the construction of three houses, two for sale and one for a personal residence. After living in the house for a year the builder decided to sell it. The Washington Supreme Court stated that the contemplation of eventual sale was not enough to give rise to an implied warranty, that the sale must be "fairly contemporaneous" with completion of the house.

The Supreme Court of Colorado, a forerunner in development of implied warranties in the sale of real property, stated that in order for the implied warranty to arise there must be a commercial sale. A commercial sale was said to occur when a person who is "in the business of building" sells a new home to a member of the public. *Sloat v. Matheny,* 625 P.2d 1031 (Colo. 1981). The Colorado Supreme Court found that a commercial sale had taken place when a builder-vendor sold a partially completed house to a member of the general public. Although the builder originally intended the home to be his personal residence, he placed it on the market prior to completion thereby converting the transaction to a commercial sale.

The Fishers were not in the business of building or selling real property. The evidence that the Fishers acted as their own general contractor in the installation of the water system, although probative on the negligence count, does not give rise to a "builder-vendor" situation. The system was installed in 1973. Thereafter the Fishers operated the trailer park until its sale in September 1977, some four years later. There was no evidence presented that the development of the new section was undertaken or completed pursuant to a plan to sell the trailer park. Thus we affirm the judgment n.o.v. of the implied warranty count, not on the grounds of failure to prove damages, but because the transaction was not one where a builder-vendor improves the realty in anticipation of sale.

■ The only remaining theory upon which Hibblers relied was the negligence theory. We will now examine that theory to see if it will support the jury's verdict. The evidence shows that the Fishers hired a contractor to put in the water system. This contractor did not have a plumber's license, nor did the Fishers. The contractor did "work under" a licensed plumber, but the record shows that the contractor did the actual plumbing work. No one obtained a permit, as required, for the water system. The Hibblers first had trouble with the water system in June 1978 when a "riser" separated from the main line. Subsequently they experienced numerous similar problems. The testimony showed that the joints were improperly glued. In April 1980, when repairing another "blown" riser, a backhoe snagged a portion of the main line. A piece of pipe came out without breaking. Expert testimony indicated that if the joints were properly glued, the pvc pipe used would break before a joint disconnected. This evidence leads to the rational inference that the entire system, including the main line, was negligently installed. There is substantial and competent evidence in the record by which the jury could conclude that the contractor was an employee or agent of the Fishers. Mr. Fisher did not hire a general contractor. He designed the improvements himself and then hired people to do the work. The

**1.** *See Pollard v. Saxe & Yolles Development Company,* 12 Cal.3d 374, 115 Cal.Rptr. 648, 525 P.2d 88 (1974) (implied warranty applicable to sale of apartment building, notice of defects also required as in chattel warranties). *See also*

*Sampson Construction Co. v. Farmers Coop. El. Co., Marshall, Okl.,* 382 F.2d 645 (10th Cir.1967) (implied warranty of fitness and suitability in contract for construction of grain storage annex).

contractor hired to install the water system testified that Mr. Fisher had control over the project and the manner in which the work was done.

A jury could also find Mr. Fisher negligent without imputing the contractor's negligence to him. Mr. Fisher testified that he drew up the plans and admitted that he did not obtain a permit to install the water system. He hired a contractor who was not licensed to perform plumbing services and failed to supervise the work to ensure that a licensed plumber was on the job. He designed the system in such a manner that the completed system was in violation of the state plumbing code.

The jury returned a special verdict finding negligence on the part of the Fishers which was the proximate cause of the damages. However, in fixing the damages the jury awarded $15,000 for the breach of implied warranty and nothing for negligence. The only damages proven by the Hibblers in this case were the cost of repair or replacement of the defective plumbing. Here, the jury was instructed "[t]here can be no recovery by the plaintiffs for purely economic loss, if any, on the claim of negligence. 'Economic Loss' is the cost of repairing and replacing the alleged defective goods [sic]." This instruction, numbered 16, is the only plausible reason shown for the jury not to have awarded $15,000 damages under the negligence count as it had under the implied warranty count.

██ The Hibblers objected at trial to the giving of instruction No. 16, but they have not assigned any error on appeal to

the correctness of the instruction. We note in passing that instruction No. 16 states the law of products liability. *See Clark v. International Harvester Co.,* 99 Idaho 326, 581 P.2d 784 (1978). However, it is unclear if the rule is the same in an action founded on negligent construction. *See Cosmopolitan Homes, Inc. v. Weller,* 663 P.2d 1041 (Colo.1983). Because the issue was not presented to us on appeal we do not decide it or intimate that the court's instruction was erroneous.[2] What we do decide is that there was sufficient competent evidence to sustain the jury's finding that the Fishers' negligence was the proximate cause of the damage to the Hibblers. Nevertheless, because no error has been ascribed on appeal to the giving of instruction No. 16 and because—after our own research and analysis—no error has been found in the instruction given, we are constrained to affirm the judgment n.o.v.

In denying the Hibblers' motion to reconsider the judgment n.o.v., the trial judge also denied their alternative motion for a new trial. No separate error has been assigned to the failure to grant a new trial. Before that ruling could be over turned by this court it would have to be shown that denial of a new trial was an abuse of discretion. *Stout v. Westover,* 106 Idaho 533, 681 P.2d 1008 (1984). There has been no such showing in this case. Therefore, the order denying a new trial is affirmed.

Costs to respondents, Fishers; no attorney fees awarded on appeal.

WALTERS, C.J., concurs.

---

**2.** Authority exists which supports the instruction as given. *See Berman v. Watergate West, Inc.,* 391 A.2d 1351 (D.C.1978) (products liability law applies to sale of newly construction homes). *See also Clark v. International Harvester Co.,* 99 Idaho 326, 581 P.2d 784 (1978) (economic loss not recoverable in products liability action grounded in negligence; law concerning unintentional torts has not traditionally protected the economic expectations of parties). *See also Redarowicz v. Ohlendorf,* 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982) (homeowners economic losses comprised of replacement and repair of defectively constructed chimney, adjoining wall and patio not recoverable in negligence). A California appellate court,

on the other hand, has permitted a subsequent purchaser to maintain a negligence action for purely economic damages against a owner-developer whose wholly owned construction company built a defective apartment complex. *See Huang v. Garner,* 157 Cal.App.3d 404, 203 Cal. Rptr. 800 (Cal.App. 1 Dist.1984) (relying on *J'Aire Corp. v. Gregory,* 24 Cal.3d 799, 157 Cal. Rptr. 407, 598 P.2d 60 (1979)). It is not at all certain, however, that even if Idaho were to follow the position taken by the California appellate court in *Huang,* the plaintiffs here would come within those limited circumstances which permit recovery of purely economic damages in a negligence action.

BURNETT, Judge, concurring in part and dissenting in part.

I concur in that part of the Court's opinion which discusses the scope of evidence to be considered when ruling on a motion for judgment n.o.v. The opinion correctly holds, in light of all evidence presented at trial, that a judgment n.o.v. should not have been entered in this case. However, the opinion invokes alternative grounds to sustain the judgment. With respect to the fraud issue, the opinion holds that the proof of damages was insufficient to go to a jury. I respectfully disagree.

The district judge granted a directed verdict on fraud because, in his view, damages had not been established by "clear and convincing" evidence. Today's majority deems the proof to be inadequate for a different reason. Noting that the plaintiffs' evidence simply showed the estimated cost of replacing the defective water system, the majority states that "Idaho case law does not support replacement cost as an appropriate remedy for fraud." I will discuss, in turn, the differing approaches of the district court and the majority.

The trial judge's reliance upon the "clear and convincing" standard is consistent with Idaho's pattern jury instructions. According to IDJI 460, one of the elements of proof in a fraud case is "[t]he nature and extent of the plaintiff's damages and the *amount* thereof." (Emphasis added.) However, the IDJI is not a source of substantive law. *See* I.R.C.P. 51(a)(2). The underlying authority cited for Instruction No. 460 consists of *Faw v. Greenwood,* 101 Idaho 387, 613 P.2d 1338 (1980); *Smith v. King,* 100 Idaho 331, 597 P.2d 217 (1979); and *King v. McNeel, Inc.,* 94 Idaho 444, 489 P.2d 1324 (1971). These cases do not contain language corresponding to Instruction No. 460. Rather, with respect to damages, the cited cases state only that a plaintiff must prove, by clear and convincing evidence, "his consequent and proximate injury." *Faw,* 101 Idaho at 389, 613 P.2d at 1340; *Smith,* 100 Idaho at 334, 597 P.2d at 220; *McNeel,* 94 Idaho at 446, 489 P.2d at 1326. The cases do not hold that a plaintiff

must show the *amount* of his damages by the same quantum of proof. In many other jurisdictions, the case law imposes a "clear and convincing" standard upon evidence showing fraud and the fact of damage. But the standard has not been stated broadly to encompass the amount of damages. *See generally* 37 AM.JUR.2d *Fraud and Deceit* § 468 (1968).

In this case, I believe the district judge may have been misled by IDJI 460. The fraud issue should not have been taken from the jury upon application of the "clear and convincing" standard. Because I believe the standard is inapplicable, I need not reach the related question whether a judge ever should direct a verdict when the evidence is substantial, albeit not "clear and convincing," in the judge's mind.

The majority today focuses not upon the quantum of proof but upon what has been proven. The majority declares that evidence of replacement cost is insufficient to prove damages for fraud. I submit that this declaration is overbroad and inappropriate to the instant case. Concededly, replacement cost, in and of itself, does not constitute the measure of damages for fraud. Rather, the ordinary measure of damages, often termed the "out-of-pocket" measure, is the difference between the actual value of the property purchased and the contract price. In extraordinary circumstances not applicable here, a court might choose instead to employ a "benefit-of-bargain" measure—the difference between the actual value of the property and the value that would have been realized if all representations concerning the property had been true. *See generally Shrives v. Talbot,* 91 Idaho 338, 345, 421 P.2d 133, 140 (1966).

However, it is one thing to recite a measure of damages; it is quite another to limit the permissible methods of proof. Nothing in the "out-of-pocket" measure bars a plaintiff from establishing the cost to eliminate defects in the property and then arguing that such cost represents the

difference between the actual value of the property and the contract price. In this case, I believe such an argument would have been meritorious and could have been accepted by the jury.

The Idaho Supreme Court has acknowledged this method of proof. In *Koehler v. Stenerson,* 74 Idaho 281, 260 P.2d 1101 (1953), and in *Addy v. Stewart,* 69 Idaho 357, 207 P.2d 498 (1949), the Court stated that evidence of replacement or repair costs could be considered in determining damages for fraud. Of course, in each case, other evidence also had been presented. But in *Jensen v. Bledsoe,* 100 Idaho 84, 593 P.2d 988 (1979), the Court upheld the proof of damages for fraud, referring only to the cost of replacing defective equipment. The Court said:

> The trial court reasonably could have inferred that the price respondents agreed to pay for the property reflected the probable cost of the cased well and sewage disposal system which appellant claimed existed. Consequently, the reasonable cost of drilling a cased well and installing an approved sewage disposal system was properly considered by the court as evidence in determining the difference, if any, between the purchase price as agreed and the value of the property as delivered to respondents.

*Id.* at 88, 593 P.2d at 992.

In the present case, I would hold that the plaintiffs' evidence of replacement cost, although not the best method of proving damages, was sufficient to take the case to the jury. The jury could have inferred that the cost of replacing the defective water system was an appropriate measure of the difference in value between the contract price for the mobile home park and the value of the park with its defective water system. Because the fraud issue should have gone to the jury, I would reverse the judgment n.o.v. and remand the case for a new trial. I express no view as to other issues embraced by the majority's alternative grounds for affirming the judgment.